Carl V. HENRY, Plaintiff-Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 17171.

United States Court of Appeals
Sixth Circuit.

July 19, 1967.

H. H. Gearinger, of Gearinger & Vineyard, Chattanooga, Tenn., for appellant.

Thomas A. Williams, Asst. U. S. Atty., Chattanooga, Tenn. (J. H. Reddy, U. S. Atty., Chattanooga, Tenn., on the brief), for appellee.

Before WEICK, Chief Judge, COMBS, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal from an order of the District Court for the Eastern District of Tennessee, Southern Division, affirming the Secretary's denial of appellant's application seeking a period of disability and disability benefits under Section 416(i) and 423, Title 42, U.S.C.

██ On December 12, 1963, Carl V. Henry, the appellant herein, applied for disability benefits, alleging that he became disabled on December 3, 1953.[1] The appellant's insured status terminated on June 30, 1954. It is unquestioned that at that time the appellant was disabled within the meaning of the Act by reason of tuberculosis. Because appellant's insured status terminated on June 30, 1954, it was incumbent upon the appellant to prove that beginning on or before that date he was continuously disabled until at least twelve months prior to filing his application. Section 416 (i) (2) (E), Title 42, U.S.C., states that no application for disability benefits shall be accepted if filed more than twelve months after the period of disability ends.

Appellant was born in 1920, and received a sixth grade education. Beginning in 1937, appellant worked at various jobs in the coal mines, including digging, dynamiting and handling coal. Prior to 1946 he also worked outside the mines as an operator of coal loading machines and caretaker of the battery lights for coal miners' belts. He has been a molder's helper, pouring molten iron around molds to make cast iron pipes and has worked

---

1. Appellant originally filed for disability benefits on July 6, 1961, and the claim was denied. Having failed to exhaust his administrative remedies, the denial of his 1961 application is not subject to review herein.

for a sawmill. He last worked as an assembler and crater of stoves, leaving the *job in December 1953, after eight months' employment.* Other than one unsuccessful attempt to regain this lost position, the record reveals no other evidence of any attempts by appellant to secure employment.

Appellant was admitted to the Tennessee Tuberculosis Hospital on January 11, 1954, with a diagnosis of active minimal pulmonary tuberculosis, involving the right apex. Appellant was placed on drug therapy, and on May 25, 1954, a segmental resection involving the right upper lobe was done. Appellant was discharged from the hospital on July 11, 1954, but continued to receive drug therapy until June 10, 1957. Upon his discharge from the hospital in July, 1954, appellant's sputum analysis was negative and his condition was described as "minimal pulmonary tuberculosis; apparently arrested. Marked improvement with segmental resection." Following his release, appellant was x-rayed three to five times a year, until February 3, 1958. Beginning on February 25, 1955, the x-rays revealed that the tubercular condition was arrested, and Dr. E. F. Harrison, medical director of the Tennessee Tuberculosis Hospital, noted that "it would seem perfectly safe for the individual to begin to do some form of light work in which only a minimal amount of physical exertion is involved." Following the next examination of appellant, on July 8, 1955, Dr. Harrison stated that it was "perfectly safe" for appellant to do light work. Beginning April 23, 1956, the x-rays revealed that appellant's tubercular condition was "inactive". The hospital records in addition to noting the inactive state of appellant's condition, thereafter also contain various complaints of nervousness, hacking cough, and chest and stomach pains. Following appellant's x-ray check and examination of February 3, 1958, there is no record of appellant ever having seen a doctor until June 5, 1961, when he was again examined by Dr. Harrison at the Tennessee Tuberculosis Hospital, out-patient clinic. The

x-rays again indicated that this tubercular condition was inactive. Dr. Harrison stated on July 11, 1961, that "so far as this man's pulmonary tuberculosis was concerned, it is believed it is perfectly safe for him to work full time at most any form of work." Two later x-ray examinations, on June 4, 1962, and June 17, 1963, also revealed that appellant's tubercular condition was inactive. The inactive status of appellant's tubercular condition was confirmed by Dr. William G. Shull, a general practitioner, in his report dated July 4, 1961. The report added that the appellant sighed a great deal, had dizzy spells and blackouts, had pain in both shoulders and upper chest, down to the thumb. Dr. Shull stated that appellant's activity tolerance was very slight.

Dr. Mabe submitted a report, dated August 30, 1963, stating that the appellant was hospitalized in 1961 and from May 21, 1962 to June 1, 1962. He diagnosed the appellant as suffering from "mild pulmonary emphysema, chest pain secondary to his old pulmonary surgery and peripheral neuritis, all of which makes it difficult for him to perform gainful occupation for which he would be qualified." In a later report dated January 14, 1964, Dr. Mabe's diagnosis was pulmonary emphysema, asthmatic bronchitis, and intercostal neuritis. He added that a good part of appellant's pulmonary disorders were related to his excessive smoking, which appellant refused to curtail. In a letter to appellant's attorney, dated February 1, 1965, Dr. Mabe speculated that 50% of appellant's disability was related to his tuberculosis. There is little doubt that appellant's emphysema and intercostal neuritis were residual effects of the tuberculosis and his lung resection surgery. Dr. Mabe testified at the hearing before the examiner that there was a 90% chance that the bronchitis would have developed without the tuberculosis. He felt that the bronchitis could be treated and improved by medication. When appellant first visited Dr. Mabe, his emphysema was only in a moderate stage. He could not relate the

severity of the emphysema or its accompanying symptoms back to June, 1957, when the tuberculosis drug therapy was discontinued. Dr. Mabe further testified that although appellant could not perform any strenuous employment, he was physically capable of performing certain sedentary jobs and other jobs which required standing and lifting of not more than ten pounds, two or three times an hour, as long as the atmosphere in which it was done did not contain lung irritants.

Dr. Maurice S. Rawlings, a board certified specialist in internal medicine and cardio-vascular diseases, stated at the hearing, after reviewing the medical reports submitted in the case, that the appellant suffered from minimal tuberculosis which was inactive. Dr. Rawlings testified that there was not enough evidence in the reports for him to determine whether appellant was suffering from emphysema. He further stated that following a removal of a part of a lung, the remaining lung functions are generally very good. He did not believe that the bronchitis was related to the tuberculosis. He felt that both the bronchitis and the intercostal neuritis could be remedied by medication and treatment. He expressed his opinion that the appellant could engage in light work requiring standing as long as it was not necessary to lift weights greater than ten to fifteen pounds more than three to four times an hour.

Based upon this record, the hearing examiner concluded that the appellant did not establish a period of disability to qualify for disability benefits. He held that the appellant "was not continuously disabled since his original impairment and that he even now retains a capacity for sedentary or light work." The hearing examiner further held that the appellant was not presently disabled because the intercostal neuritis and bronchitis could be remedied by medical treatment, and that the emphysema had not been established to be of such severity as to preclude sedentary and light work. The Appeals Council affirmed the findings and conclusions of the hearing examiner.

The appellant then sought review in the District Court, which on February 20, 1966, affirmed the conclusion of the Secretary. The appellant then sought review in this Court. On April 25, 1966, this Court remanded the case to the District Court to consider appellant's motion to reconsider the cause and set aside the prior judgment because of newly discovered evidence. The new evidence consisted of a report by Dr. John M. Crowell, dated March 4, 1966, in which the doctor stated that appellant's tuberculosis was active. The District Court, treating the matter as a motion under Rule 60(b) (2) of the F.R.Civ.P., remanded the case "to the Secretary for him, or his delegate, to determine whether the motion to correct the judgment should be considered and, if so, to have a hearing thereon and to report his action to this court." The Appeals Council, without holding a hearing, determined that no change in the prior decisions were warranted because "any present inability to engage in substantial gainful activity occurred long after his insured status ended. The uncontroverted evidence of record clearly shows that the claimant was able to engage in substantial activity for a number of years after April 1955." The Council held that the alleged newly discovered evidence, if proven, would not change the status of the claimant. The District Court affirmed this action of the Appeals Council. The matter is now fully before this Court.

The question before us is whether the findings of the Secretary are supported by substantial evidence. Section 405(g), Title 42, U.S.C. We are bound by the inferences drawn by the Secretary even though we might have reached an opposite conclusion if we were free to consider the matter de novo. Palmer v. Celebrezze, 334 F.2d 306 (C.A.3). The party applying for disability benefits has the burden of proving the requisite disability and period of disability. Section 423(c) (2), Title 42, U.S.C.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physi-

cal or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Section 423(c) (2) (A), Title 42, U.S.C. In order to establish a "period of disability" this appellant must prove that he was continuously disabled from at least June 30, 1954, to within twelve months of his filing of this application on December 12, 1963. Section 416(i) (2) (A), Title 42, U.S.C. Appellant had the burden of proving both that he was disabled within 12 months of filing his application and that he was continuously disabled from June 30, 1954, when his insured status terminated. Proof of a current disability alone would not entitle appellant to benefits. The fact that a person who has recovered from a prior disability subsequently suffers a relapse or suffers from a new disability does not entitle such person to disability benefits if he is no longer an insured under the Act.

■■ The fact that a person is suffering from a diagnosed disease or ailment is not sufficient in the absence of proof of its disabling severity to warrant the award of benefits. Galli v. Celebrezze, 339 F.2d 924 (C.A.9). An impairment that can be remedied by treatment will not serve as a basis for a finding of disability. "An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity." Section 404.1502(g), Social Security Regulations No. 4 (20 C.F.R. 404.1502(g)). See also, Purdham v. Celebrezze, 349 F.2d 828 (C.A.4).

■ In the present case the undisputed medical testimony was to the effect that both the bronchitis and the intercostal neuritis were amenable to treatment. As far as the appellant's emphysema is concerned, its condition at the time of his application for benefits was not so severe as to incapacitate him from performing any substantial gainful activity. When he first examined the appellant in 1961, Dr. Mabe described the condition as moderate and stated that the appellant could perform sedentary and light work. The only limit placed upon appellant's activity by Dr. Mabe was that he could not engage in activity which required strenuous labor. The appellant also aggravated his condition by refusing Dr. Mabe's advice that he cut down on his smoking. Dr. Rawlings also concluded that the appellant could engage in light work which did not require excessive lifting. On this state of the record the Secretary was justified in concluding that appellant had failed to prove that he was under a disability entitling him to an award of benefits.

■ The Secretary further found that even assuming that the appellant was presently under a disability, he had failed to prove that he was continuously disabled from June 30, 1954, the date that his insured status terminated. As early as February, 1955, following appellant's lung resection, the medical director of the Tennessee Tuberculosis Hospital stated that appellant could perform light and sedentary work. In July, 1961, the director stated that appellant was able to "work full time at most any form of work." All x-rays following the appellant's release from the hospital indicate that his tubercular condition was alleviated and "inactive". There further appears to be a three year hiatus from February, 1958, to June, 1961, in which the appellant did not even visit a doctor. This evidence was not sufficient to satisfy the appellant's burden of proving that he was continuously disabled throughout the period under consideration herein. The Secretary was correct in finding that appellant was not continuously disabled from June 30, 1954, to a time within twelve months of the filing of his application for benefits.

■ In view of the fact that the appellant was not continuously disabled throughout the requisite period, the Appeals Council was justified in refusing to reconsider the matter upon the ground

of newly discovered evidence. Assuming that the appellant is presently suffering from a disabling case of active pulmonary tuberculosis, the fact that this condition was not disabling throughout the entire period, precludes his recovery of benefits. It was necessary for appellant to prove that he was continuously under some disability from the date that his insured status terminated on June 30, 1954. Having failed to do so, he cannot now, some thirteen years later, seek benefits from an alleged present disability.

The judgment of the District Court is affirmed.