Marie S. CRAWLEY, Plaintiff,

v.

Robert H. FINCH, Secretary of Health, Education and Welfare, Defendant.

No. 1831.

United States District Court
E. D. Kentucky,
Lexington Division.

July 1, 1969.

Kenneth H. Smee, Lexington, Ky., for plaintiff.

George I. Cline, U. S. Atty., Lexington, Ky., for defendant.

## MEMORANDUM

SWINFORD, Chief Judge.

The plaintiff, Marie S. Crawley, brings this action under the provisions of 42 U.S.C. § 405(g). She seeks a review of the Secretary's decision of January 19, 1968, which denied her benefits under the Social Security Act after October 31, 1966.

Mrs. Crawley is 43 years of age and lives with her husband and two children in Lexington, Kentucky. She was in the twelfth grade when she left school to go to work. All of her employment, with the exception of a few months, was with the local telephone company. She began working there in 1942 and worked until July of 1955. After the birth of her first child, she returned to work in February of 1957 and worked until November of 1958. She was not only a telephone operator, but "worked just about everything they had to do." (Tr–41–42) She testified that in 1958 she suffered

from dizzy spells; that she was advised by her doctor to quit work; and that she had not been employed since November of 1958. (Tr–43–44) Her second child was born on December 17, 1959.

On June 13, 1962, she filed an application for disability benefits. Her impairments were listed as "dizziness & fainting—nervous" and she alleged she became unable to work because of these impairments on November 8, 1958. Benefits were allowed on this application on November 28, 1962. The disability determination of the Social Security Administration contains this statement:

"The applicant states that she is unable to work because of dizziness and passing out spells and nervousness. A current psychiatric examination gives a diagnosis of psychoneurosis, anxiety reaction with conversion manifestations, severe and incapacitating for responsible independent work. While it is felt that the applicant can continue doing her housework that she is unable to engage in public work. In view of the evidence in the file it is therefore determined that the applicant has been under a disability since the alleged date of onset." (Exhibit 3, Tr–72)

On August 21, 1963, the "Request for Field Investigation of Continuing Disability", a form of the Social Security Administration, has a diagnoses of "Psychoneurosis, anxiety reaction with conversion manifestations" and the item "Suspension of benefits not requested" is checked. (Exhibit 5, Tr–74) This form is duplicated on October 20, 1964 (Exhibit 6, Tr–76), on May 27, 1965 (Exhibit 8, Tr–79) and on June 10, 1966 (Exhibit 9, Tr–81).

On January 18, 1965, a medical consultant for the Administration signed a form "Cessation or Continuance of Disability" in which the following was set forth:

"This W/E (wage earner) has been under a disability since a determination of 11/28/62, the diagnosis being psychoneurosis, anxiety reaction with conversion manifestations.

"The report of a recent re-examination reveals that although not unduly depressed, tears did come to her eyes occasionally when speaking of her problems. The personal relationship between husband and wife is somewhat impaired because of the W/E's (wage earner's) rigid attitude towards sex. Her primary handicap is being fearful of being left alone. She is considered to be suffering from a psychoneurotic reaction manifest by occasional episodes of dissociation and mild phobic formation. It is determined that she has not regained her capacity for work and the disability continues with a recommendation that she be examined again in 9 months." (Exhibit 7, Tr–78)

On September 23, 1966, a medical consultant made the following report on the same form:

"On a determination of 11-28-62 the W/E (wage earner) was found to be under a disability, the diagnosis being psychoneurosis, anxiety reaction with conversion manifestations. On a determination of 1-18-65 the disability was continued. According to the report of contact of 7-19-66 the W/E (wage earner) is not on any kind of medication. The W/E (wage earner) states that she has dizzy spells frequently and feels she cannot work for this reason.

"A consultative examination report dated 9-6-66 shows that on examination the W/E (wage earner) is oriented in all spheres and in excellent contact with her environment. She relates well, expresses no unusual thought content or delusions. Thought associations are normal. There is no fragmentation or blocking. Thought content reveals no delusional material. Affect is appropriate to thought content. She does not appear unduly elated nor depressed. The interview failed to reveal any significant psychopathology. There is no evidence of psychosis. Diagnosis is psychoneu-

rosis, photic type, mild." (Exhibit 10, Tr–83)

Page 2 of Exhibit 10 shows that on October 5, 1966, the disability examiner made the following finding:

"In view of the evidence in the file, including medical reports, it is determined that the W/E's (wage earner's) impairment is no longer of a level of severity as to prevent engagement in all types of work activity. Therefore, disability ceases as of 8-25-66, the date of the latest medical examination." (Tr–84)

Mrs. Crawley was notified on October 26, 1966, that the last disability check to which she was entitled was for the month of October 1966. On October 28, 1966, she requested a reconsideration and gave her reasons.

"I am no better now than I have been since I became disabled. Dr. Gail gave me no indication that I was any better at all. I would be willing to go to any consultative arranged for me & would like to have another one as I disagree with this. I feel it was to brief to give accurate findings. He asked only a few questions & conducted no phy. examination." (Exhibit 13, Tr–88)

Her claim was then re-evaluated and on March 18, 1967, the disability examiner again concluded that she was able to engage in substantial gainful employment. (Exhibit 14, Tr–89–91)

The letter of March 22, 1967, from the Director, Division of Reconsideration, Bureau of Disability Insurance, advising the plaintiff of the action of the Administration's finding contains the following paragraphs:

"A period of disability was established for you beginning November 1958 because of a nervous condition. The recent medical evidence includes a report from your physician as well as the results of three special examinations arranged for you at Government expense. This evidence shows that although you are anxious to some extent, your ability to think, understand, remember and relate to other persons in ordinary daily activities is no longer seriously affected. No other condition is disclosed that would interfere with your return to work.

"According to your records you are 41 years old and have a twelfth grade education. You have work experience as a telephone operator for many years. The evidence establishes that by August 1966, your condition was no longer severe enough to prevent you from engaging in your usual work or many other types of work for which you would be qualified with your age, education, and experience. Therefore, the determination ending your period of disability with October 1966 has been affirmed, and that is the last month for which you and your children were entitled to disability benefit payments." (Exhibit 15, Tr–92–93)

On April 6, 1967, Mrs. Crawley's request for a hearing was filed in which she stated:

"I have dizzy spells and fainting spells. I will faint without any warning. I am not even able to walk to the corner to mail a letter." (Tr–29)

The hearing was held on July 7, 1967. Mr. and Mrs. Crawley and a vocational expert, Mr. Ronald G. Hampton, appeared and testified. (Tr–31–61) Before testifying, the plaintiff stated to the hearing examiner that she wished to represent herself without an attorney. (Tr–38)

Thereafter, on October 20, 1967, the hearing examiner made his decision. It is lengthy (sixteen pages of single spaced typed material with an average of 46 lines to a page) and sets forth in great detail the applicable law, issues, facts, summary of medical evidence and oral testimony, evaluation of medical evidence, and concludes with the decision.

The hearing examiner's findings and decision are as follows:

"Mrs. Crawley first worked at the telephone company when she was only

seventeen years old. After twelve years and at the age of twenty-nine years, the claimant married in December 1954. On July 25, 1955, she found it necessary to take a leave of absence because she was expecting her first child. She returned to work in February 1957 and the first child was about a year and a half old. Mrs. Crawley thereafter worked for one and one-half years, but it was during this period of time that she experienced most of her dizzy sensations and, taking the advice of Dr. Warren, she quit her job in November 1958. The second child was born in December 1959. It was in the next two and one-half years, with one child under five years of age and the other child a small baby, that the claimant's husband was obliged to give special attention to his wife's condition. Both children are now in school, however, and the situation is much changed. In this connection the Hearing Examiner calls attention to a portion of the Report of the Committee on Finance, U. S. Senate (89th Congress, 1st Session—Rept. 404, Part I) which said report accompanied H.R. 6675, the bill which ultimately resulted in the July 30, 1965, Amendments to the Social Security Act. On page 99 of this report under 4(a) Elimination of the long-continued and indefinite duration requirement from the definition of disability is found:

" '* * * The modification in the definition of disability recommended by the committee does not change the requirement in existing law that an individual must by reason of his impairment be unable to "engage" in any substantial gainful activity.[1]

" 'An individual with a disabling impairment which is amenable to treatment that could be expected to restore his ability to work would meet the revised definition if he is undergoing therapy prescribed by his treatment sources, but his disability nevertheless has lasted, or can be expected to last, for at least 12 calendar months. However, an individual who willfully fails to follow such prescribed treatment could not by virtue of such failure qualify for benefits.

" 'The committee expects that, as now, precedures will be utilized to assure that the worker's condition will be reviewed periodically and reports of medical examinations and work activity will be obtained where appropriate so that benefits may be terminated promptly where the worker ceases to be disabled.'

"Having received the benefit of the disability provisions during the time needed, it is the finding of the Hearing Examiner that Mrs. Crawley was no longer entitled to such benefits after October 31, 1966, and that her 'disability' had terminated on August 25, 1966. The Hearing Examiner also finds that the claimant's nervous condition is not so severe as to prevent her return to her regular employment or to the alternative jobs suggested by the vocational witness, Mr. Hampton.

"After consideration of all the evidence in this case, it is the decision of the Hearing Examiner that the claimant has not established that she was under a 'disability' under the definition of 'disability' in the Social Security Act, in that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment after August 25, 1966, which could be expected to result in death or had lasted for a continuous period of not less than twelve months, or were impairments that would meet the pre-July 1965 definition of a disability that would last for a long and indefinite period.

"It is the further decision of the Hearing Examiner that the claimant was not entitled to either disability insurance benefits under Section 223(c), or to a period of disability under Section 216(i) of the Social Secu-

rity Act for any time commencing after October 31, 1966, and the decision of the Social Security Administration to terminate benefits, as stated to the claimant in the reconsideration notice, is correct and is hereby affirmed." (Tr–24–26)

On November 9, 1967, the plaintiff requested a review by the Appeals Council and accompanied the request with a 6 page, handwritten document to the Appeals Council in which she set forth her reasons for feeling that the decision was unjust, "that no fair hearing actually existed and that the examiner actually did not intend to include (her) case in the cases he is allowed to find in favor of." (Tr–7–8)

On January 19, 1968, the Appeals Council adopted the decision of the hearing examiner and it thus became the final decision of the Secretary. This case was timely filed on February 26, 1968, and is now before the court on the motions for summary judgment filed by the defendant and plaintiff respectively. A transcript of all proceedings relative to the application of the plaintiff has been filed. Each party has filed a brief in support of the motions for summary judgment.

Social Security benefits were allowed to the plaintiff in November 1962. This determination of entitlement to benefits was apparently based on the statement and report of Dr. A. S. Warren dated December 1, 1958, and July 19, 1962, respectively (Exhibits 26 and 29, Tr–116 and 121–122), the report of Dr. Glenn Dorroh of June 23, 1962 (Exhibit 27, Tr –118–119), and a report of Psychiatric Associates of September 7, 1962, signed by Dr. Harold W. Meek and Dr. William V. Walsh. (Exhibit 30 Tr–123–124)

Dr. Warren, whose specialty is internal medicine, stated on December 1, 1958, that Mrs. Crawley "is suffering from a nervous reaction and I believe it is wise for her to discontinue her present occupation at the telephone company." On July 19, 1962, on the Medical Report Form of the Administration under "Cardiac, Respiratory, Arthritic, Neurological, or Visual Conditions", he reported "normal limits" on the first three, "negative objective finding" under neurological and "normal" under visual. His diagnosis was "(1) Chain Tension State, (2) Psychoneurosis, (3) obesity, alimentary". The subjective symptoms were "multiple & varied" and the objective symptoms were "none". Dr. Dorroh, an internist reported on June 23, 1962, that x-rays, E.K.G. and Basal Metabolism were "all normal 1957–1958". Under "Remarks" he stated:

"Patient worked at Telephone Company and had repeated fainting episodes & dizziness etc. Diagnosis Psychoneurosis, anxiety state. Had treatment because of 'nerves' from several Doctors." (Tr–119)

Dr. Walsh, a psychiatrist, and Dr. Meek, a psychologist, (Psychiatric Associates) examined the plaintiff on August 27, 1962. Their diagnosis was:

"Psychoneurosis, anxiety reaction with conversion manifestations, severe and incapacitating for responsible independent work." (Tr–124)

The next medical evidence in the record is a "Psychiatric Abstract" dated January 11, 1965, and signed by Dr. Irving A. Gail, a psychiatrist. The diagnosis is "psychoneurotic reaction—phobic type, moderate." This same psychiatrist examined and reported on the plaintiff approximately twenty months later. His entire report is quoted as it succinctly described the plaintiff.

"This applicant is a 40 year old, well developed, well nourished, tall, white married female who was seen by the examiner about twenty months ago for evaluation. Her presentation on 8/25/66 is strikingly similar to the one dated 1/11/65. She came accompanied by her husband as she had done the last time. She indicates that she is reluctant to go places unescorted. When asked to present her complaints she says 'about the same old things'. She indicates that she doesn't know what bothers her, but she is subject to dizzy spells that seem to appear all of

a sudden. These allegedly began in 1957 while she was working for the telephone company. She left work at that time and has not been employed since.

"At the present time the patient does her housework; she takes care of five rooms and bath. She says her children who are six and ten and her husband help about the house in doing odd chores. Her husband is now employed at the Lexington Blue Grass Army Depot.

"Patient has not been hospitalized for treatment of any complaints since last seen. At times she feels tense and sometimes feels short of breath. Occasionally she has a sense of depression which is of short duration. She summates her complaints by saying, 'that's about it, no pain or anything.'

"Mental status indicates that the patient is oriented in all spheres and in excellent contact with her environment. She relates well, expresses no unusual thought content or delusions. Thought associations are normal. There is no fragmentation or blocking. Thought content reveals no delusional material. Patient's affect is appropriate to thought content. She does not appear unduly elated or depressed. There is no complaint of memory failure.

"Interview fails to reveal any significant psychopathology. The patient does complain of being anxious when left by herself. She is functioning within her own household and family setting.

"There is no evidence of psychosis. Patient is competent to handle benefits she may receive.

"Diagnosis: Psychoneurosis, Phobic Type, Mild." (Tr–129–130)

Dr. Donald I. George of Psychiatric Associates, relying on the records of that group, stated on November 7, 1966, that in his opinion:

"Mrs. Crawley has shown no improvement since her initial examination and that the degree of anxiety and fear is severe enough to be considered markedly disabling. I do not feel that she is exaggerating her symptoms for secondary gain purposes and after this long a duration it is extremely doubtful if she is going to be able to resume gainful employment." (Tr–132)

Dr. Myron Nizankowsky, Psychiatric Consultant, Bureau of Disability Insurance, Springfield State Hospital, Sykesville, Maryland, had the psychiatric abstracts referred to above before him in commenting on the functional limitations imposed by the plaintiff's mental condition. His conclusion is as follows:

"There is no doubt that the applicant is suffering from psychoneurosis. However, it is my opinion that her condition does not approach disabling proportions. The applicant is a relatively young person with a good education. It is possible that her occupation as a telephone operator, perhaps, it is too stressful for her; however, taking into consideration her age, her education and intelligence, there might be some type of work she could do and which would actually benefit her." (Tr–135)

An addendum to the report of Dr. Nizankowsky, signed by Dr. Kurt Nussbaum, Chief Consultant in Psychiatry and Neurology, Bureau of Disability Insurance, Baltimore, Maryland, states:

"This WE (wage earner) has not taken treatment for her condition for a long period, nevertheless, she is well preserved in all respects. Although Dr. George arrives at an opinion of continuing severity, his description dovetails with that of Dr. Gail. The WE's (wage earner's) complaints are not borne out by the objective signs.

"I agree with Dr. Nizankowsky's review that this WE (wage earner) now could return to gainful occupation." (Tr–135)

This report is dated January 19, 1967.

The test results of Dr. Jean C. Lee, a psychologist, and Mr. I. T. Baldwin, a psychologist, (Psychological Associates,

Ltd., Lexington, Kentucky) on February 14, 1967, are as follows:

"As measured by the WAIS (Wechsler Adult Intelligence Scale), Mrs. Crawley is presently functioning in the AVERAGE range of intelligence (I.Q. 98). Subtest scores are all within normal limits and there is no deficit in any area measured by this test. Immediate memory for both verbal and visual materials is within normal limits. There is no test evidence of brain damage." (Tr–138)

Their summary is that:.

"Mrs. Marie S. Crawley is a 41 year old telephone operator, unemployed since 1958 because of dizziness and fainting. She is currently functioning in the AVERAGE range of intelligence, and test responses indicate no significant intellectual impairment. The client does not appear particularly anxious and depressed although there is test evidence of internal conflict. It seems likely that her physical complaints are an expression of anxiety stemming from these rather serious conflicts and that she remains largely unaware of her real problems." (Tr –139)

On February 17, 1967, Dr. William N. Lipscomb, another psychiatrist of Lexington, Kentucky, examined the plaintiff. His report, dated February 28, 1967, lists "Background Information and Past History", "Present Illness and Chief Complaints", "Interview With Husband", "Routine of Day", "Brief Neurological Tests", "Analysis of Reports", "Report From District Office", "General Comments" and "Diagnostic Impressions". He gives as his explanation for the length of his report "that it is an attempt at an accurate and fair evaluation."

His Diagnostic Impressions include the following paragraph:

"Predisposition is moderate. Stress at present is minimal and if such it is self-created. Degree of psychiatric impairment is diluted with satisfaction of being ill, the continued expectance of Social Security benefits, and I think, a reluctance to depart from a 'feather-bedded' existence to one wherein work is required. Neither the anxiety nor the phobia prevents attendance at drive-in movies, picnics or travel with husband and children. Does anyone interpret motivation for treatment or work?" (Tr–145)

The report of Dr. Champ Ligon, a Lexington psychiatrist who examined the plaintiff on April 6, 1967, is the briefest of all the psychiatric reports in the record. It is quoted in its entirety:

"I. HISTORY:

Mrs. Marie S. Crawley is a 41 yr old WF, unemployed for past 9 years, telephone operator for 15 years. She is married & the mother of two children.

She complains of having been depressed for the last 9 years; she has been tried on numerous medicines without effect. She also complains of having dizzy spells, nervousness, not being able to stand crowds, and crying spells. These complaints began about 1957 soon after the birth of her first baby.

"II. PHYSICAL FINDINGS:

Height 5'10"—Weight 155 lbs.

Physically, she is a tall, well-developed, well-nourished WF, appearing healthy and the stated age of 41. There are no significant physical findings.

"III. LABORATORY AND SPECIAL STUDIES:

None available.

"IV. DIAGNOSES:

1. Depressive Reaction, Severe. (Needs Hospitalization)" (Tr–147–150)

Mr. Ronald C. Hampton, a vocational expert, testified at the hearing on July 7, 1967. With reference to his qualifications, he stated:

"I have a Bachelor of Science degree in industrial arts education and Mas-

ter's degree in rehabilitation counselling from the University of Florida, with additional special graduate study with special courses at various universities and colleges. I've been the Executive Director of the Opportunity Workshop since September of 1961. The OWL is a non-profit corporation which offers vocational rehabilitation in the form of evaluation and/or training and to both the physically and mentally handicapped with the ultimate goal of placement into industry or business. Part of my over-all duties, of course, are administrative as well as guidance and counselling and placement of the people. Prior to coming to Lexington, I was Director of a rehabilitation facility in Selma, Alabama, about a year and a half. I'm a member of various professional organizations which relate to my work, and also a consultant to various government and private agencies doing rehabilitation work." (Tr–57–58)

He also stated that he had studied the exhibits; that he heard all the testimony elicited at the hearing; and that he had past experience in counselling individuals with impairments similar to those of Mrs. Crawley.

In response to an assumption indicated by the hearing examiner that the plaintiff is now able to return to her work as a telephone operator or able to enter into other moderate, light or sedentary types of work, Mr. Hampton testified that, in his opinion, she could function as an answering service operator or as a telephone solicitor or as an operator within a general telephone system.

The plaintiff's husband questioned Mr. Hampton as to what his answer would be if the examiner's assumption of psychoneurosis included Dr. Ligon's diagnosis of "severe." Mr. Hampton stated this would only make a difference "in the sense of returning to the switchboard as such and dealing with other people"; but not "operating on her own, possibly out of her home, or in a smaller area of work. * * * the answering

services and solicitation type of telephone." (Tr–59–61)

The court is of the opinion that the defendant has made every effort to arrive at the correct decision in this case. The record is replete with psychiatric reports from numerous psychiatrists and psychologists and reports of contact over a period of five or six years. The hearing examiner, in his decision, carefully considered and discussed all of this mass of evidence.

As stated in Campbell v. Gardner, 6 Cir., 370 F.2d 921, the medical testimony in this case would permit the hearing examiner to reach almost any conclusion. However, it is settled that the burden of proof rests upon the plaintiff to establish her entitlement to disability benefits under the Act. The Act plainly directs that the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. And it is equally clear that the same finality extends as well to such inferences and conclusions as the Secretary may reasonably draw from the evidence. May v. Gardner, 6 Cir., 362 F.2d 616; McMullen v. Celebrezze, 9 Cir., 335 F.2d 811, 816, cert. denied, 382 U.S. 854, 86 S.Ct. 106, 15 L.Ed.2d 92.

It is not denied that the plaintiff has a personality problem and is suffering from psychoneurosis (an emotional disorder of mild or moderate intensity). However, she is not psychotic and functions in the average range of intelligence. While she complains of certain physical ailments at times, such as dizziness and shortness of breath, they are not shown to be of a disabling nature. There is evidence that her psychoneurosis could be alleviated by therapy. However, she has not had such treatment. As early as September, 1962, the plaintiff was advised "that treatment, either private or through State facilities" was available for her condition, (Exhibit 30, Tr–124) but she has not sought psychiatric help.

The Court of Appeals for the Sixth Circuit in the case of Henry v. Gardner, 381 F.2d 191 (1967), cert. denied 389

U.S. 993, 88 S.Ct. 492, 19 L.Ed.2d 487 and rehearing denied 389 U.S. 1060, 88 S.Ct. 797, 19 L.Ed.2d 864, laid down the rule to be applied in cases where an impairment can be remedied by treatment. The Court said:

> "An impairment that can be remedied by treatment will not serve as a basis for a finding of disability. 'An individual will be deemed not under a disability if, with reasonable effort and safety to himself, the impairment can be diminished to the extent that the individual will not be prevented by the impairment from engaging in any substantial gainful activity.' Section 404.1502(g), Social Security Regulations No. 4 (20 C.F.R. 404.1502(g)). See also, Purdham v. Celebrezze, 349 F.2d 828 (C.A.4)." 381 F.2d at 195.

This seems to be not only a legal but a common sense approach. Here we have an intelligent, well developed, well nourished, 43 year old white married female, who has borne two children, apparently without incident, and has carried on her occupation as a housewife and mother since she quit work in 1958. She has had no hospitalizations, takes no medicine and has made no attempt to be gainfully employed outside the home, even though she is oriented to the labor market. Gainful work outside the home might in itself be the therapy she needs, but she has not sought it.

> " 'Where a claimant * * * has failed to make an effort to obtain employment, it seems obvious that a finding of non-disability can be supported on less evidence than where a claimant has attempted unsuccessfully to obtain employment, or, having found employment, has been unable to carry it through.' " Sanders v. Celebrezze, 225 F.Supp. 836, 842 (D.C. Minn.), cited with approval in Campbell v. Gardner, supra.

The court must conclude that there is substantial evidence supporting the factual findings of the Secretary. Nelson v. Gardner, 6 Cir., 386 F.2d 92. It cannot consider the evidence de novo. Any conflict in the evidence was for the Secretary and not the court to decide. Lane v. Gardner, 6 Cir., 374 F.2d 612; Bailey v. Gardner, 6 Cir., 368 F.2d 841.

An order is entered as of this date sustaining the motion of the Secretary for summary judgment and dismissing the complaint at the cost of the plaintiff.