Charles J. LITWAITIS

v.

David MATHEWS, Secretary of Health, Education & Welfare.

Civ. A. No. 75–2926.

United States District Court, E. D. Pennsylvania.

Nov. 9, 1976.

Lester Krasno, Pottsville, Pa., for plaintiff.

David W. Marston, U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This case is brought under Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended in 1972, 30 U.S.C. § 901 *et seq.* Part B establishes a program for the payment of benefits by the Federal Government to coal miners or their survivors who meet the eligibility requirements of the Act and regulations promulgated thereunder. Benefits are payable under this act to living miners who are totally disabled due to pneumoconiosis arising out of coal mine employment and to the surviving dependents of a miner who was receiving benefits at the time of his death, or whose death was due to such disease, or who was totally disabled due to pneumoconiosis at the time of his death. Claimants who file within the statutory time periods and are subsequently found entitled by the Secretary of Health, Education and Welfare, receive benefits for life as long as they remain eligible.

The plaintiff filed this suit to subject to review the final decision of the Secretary of Health, Education and Welfare denying the plaintiff's claim for "Black Lung" benefits pursuant to Section 413(b) of the Federal Coal Mine Health and Safety Act, as amended (Section 23, Title 30, United States Code and Section 410.670(a) of the Social Security Regulations No. 10). Section 205(g) of the Social Security Act (42 U.S.C. § 405(g), provides that "(a)s part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based" and that "(t)he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing". It also provides that "(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive".

Plaintiff filed a formal application on June 21, 1973, for disability benefits under the Federal Coal Mine Health and Safety Act of 1969 (Tr. 39–42). The application was initially denied on February 28, 1974, by the Bureau of Disability Insurance of the Social Security Administration (Tr. 43–45). A request for reconsideration was filed on March 7, 1974 (Tr. 46). On April 11, 1974, the Bureau of Disability Insurance again denied plaintiff's claim on reconsideration (Tr. 47). Thereafter, on June 3, 1974, plaintiff requested a hearing (Tr. 20). An Administrative Law Judge before whom plaintiff appeared with counsel, considered the case *de novo* and on May 15, 1975, found plaintiff not entitled to benefits under the Act as amended (Tr. 7–11). The decision of the Administrative Law Judge became the final decision of the Secretary when the Appeals Council approved it on September 29, 1975 (Tr. 3).

Judicial review of determinations made by the Secretary pursuant to the Federal Coal Mine Health and Safety Act is available under the same terms and conditions as is judicial review of determinations under Title II of the Social Security Act. Section 413(b) of the Act, 30 U.S.C. § 923(b), incorporates Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) by reference. Section 205(g) provides that "(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

The substantial evidence rule has been unanimously accepted and applied by the courts in Social Security cases, *Myers v. Richardson,* 471 F.2d 1265 (6th Cir. 1972); *Harrison v. Richardson,* 448 F.2d 638 (6th Cir. 1971); *Halsey v. Richardson,* 441 F.2d 1230 (6th Cir. 1971); *Maggard v. Weinberger,* 364 F.Supp. 1229 (E.D.Ky.1973). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and must be sufficient to justify a refusal to direct a verdict were the case before a jury. *Richardson v. Pearles,* 402 U.S. 389, 401 (1971); *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir. 1966). Also, the conclusiveness of the Secretary's findings of fact, where supported by substantial evidence, applies to inferences and conclusions that may reasonably be drawn from the evidence. *Campbell v.*

*Gardner*, 370 F.2d 921 (6th Cir. 1967); *May v. Gardner*, 362 F.2d 616 (6th Cir. 1966); *Crawley v. Finch*, 300 F.Supp. 1343 (E.D. Ky.1969).

■ It is well settled that the burden of proof rests upon one who files a claim with an administrative agency to establish that the required conditions of eligibility have been met. This burden is to prove the case by a preponderance of the evidence. *Ryan v. Flemming*, 187 F.Supp. 655 (D.Mont. 1960); *Irvin v. Hobby*, 131 F.Supp. 851 (N.D.Iowa 1955); *Norment v. Hobby*, 124 F.Supp. 489 (N.D.Ala.1953). This rule has invariably been applied to claim arising under Title II of the Social Security Act: *Ragan v. Finch*, 435 F.2d 239 (6th Cir. 1970), *cert. denied* 402 U.S. 986, 91 S.Ct. 1685, 29 L.Ed.2d 152 (1971); *May v. Gardner, supra*; *Bartlett v. Secretary of Health, Education & Welfare*, 330 F.Supp. 1273 (E.D.Ky.1971); and is equally applicable to claims brought pursuant to Part B, Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended. Regulations No. 10, Section 410.240 and 410.475, 20 C.F.R. 410.240 and 410.475. The plaintiff contends that he has met his burden of proof and accordingly is entitled to Black Lung benefits.

The Federal Coal Mine Health and Safety Act of 1969, as amended, defines pneumoconiosis as a chronic dust disease of the lung arising out of employment in a coal mine. The term "total disability" is defined as pneumoconiosis such that prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in the mine or mines in which he previously engaged with some regularity and over a substantial period of time. Such regulations shall not provide more restricted criteria than those applicable under Section 223(d) of the Social Security Act. Under Section 411 of the Federal Coal Mine Health and Safety Act, 30 U.S.C. § 921(c)(1), if a miner was suffering or suffered from pneumoconiosis and was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that pneumoconiosis arose out of such employment. It is recognized under Section 410.426, 20 C.F.R. 410.-426 that:

"(a) * * * an impairment in the transfer of oxygen from the lung alveoli to cellular level can exist in an individual even though his chest roentgenogram (X-ray) or ventilatory function tests are normal.

\* \* \* \* \* \*

"(d) Where a ventilatory study and/or a physical performance test is medically contraindicated, or cannot be obtained, or where evidence obtained as a result of such tests does not establish that the miner is totally disabled, * * * if other relevant evidence establishes that the miner has (or had) a chronic respiratory or pulmonary impairment, the severity of which prevents him not only from doing his previous coalmine work, but also, considering his age, his education, and work experience, prevents (or prevented) him from engaging in comparable and gainful work."

Plaintiff contends that he is entitled to benefits under the Federal Coal Mine Health and Safety Act, having worked in and around the anthracite coal mines from the age of 14 to the age of 53 with the exception of his service time in the mid 1940's. He left the mines on June 14, 1973, due to his symptoms of pneumoconiosis. Plaintiff testified to the typical symptoms of pneumoconiosis, including coughing, expectoration, insomnia, inability to walk, inability to climb stairs, inability to perform anything which required any exertion. In addition, he contends that he suffers chest pains which accompany his coughing spells; he must elevate his head, is unable to drive in a relaxed manner, cannot lift, and has been under medication for his symptoms of pneumoconiosis.

Medical evidence was produced. We shall not further detail the record.

In reaching his decision, the Administrative Law Judge (ALJ) indulged in what he describes as an "evaluation of the evidence". Reference thereto discloses that it is something less than an "evaluation".

Rather, it is a "summary" of the evidence and in some respects less than complete. For example, he therein suggested that the claimant "quit voluntarily". True, the plaintiff ceased his employment "voluntarily" in the sense that he was not fired or laid off—but the record clearly shows that he "quit" because of his physical condition. Discussing the plaintiff's condition, the ALJ referred only to "chest pains, colds and difficulty in climbing and walking" (R.9). A reference to the record establishes that claimant complained of shortness of breath (R.28), coughing, inability to sleep (R.29), inability to walk more than two blocks (R.33), inability to lift or carry (R.34).

From the record, it is impossible to determine whether the plaintiff was disbelieved or whether his testimony was considered credible, but considered nonetheless not to be disabled. Throughout, the "evaluation" or summary of the evidence fails to disclose how the ALJ *evaluated* the evidence. To merely summarize does not state the *reason* for the acceptance of certain evidence and the rejection of other evidence. Similarly, in reaching his "findings" the ALJ helps us not at all in that he merely refers to the "credible" evidence but does not identify it or express his reasons for rejecting certain evidence and accepting other evidence. Section 410.654 (20 C.F.R. 410.654) of the applicable regulation clearly requires that the ALJ state the reasons for his decision.

To illustrate our difficulty, after briefly reviewing the medical evidence of record, the ALJ then made certain "findings" as follows:

"4. The claimant has not established by a preponderance of the evidence that he has pneumoconiosis or that he is 'totally disabled' as a result of a chronic respiratory or pulmonary disease on or before June 30, 1973".

Did he here reject the claimant's testimony as unbelievable and if so, why?

"5. The credible x-ray interpretations do not establish that the claimant has pneumoconiosis."

What or which "x-ray interpretations" are "credible" and why?

"6. The credible pulmonary function studies establish in all but one instance that the claimant has values which exceed the regulatory criteria for establishing an impaired ventilatory capacity."

Which "pulmonary function studies" were found to be "credible" and why?

"7. While the evidence indicates that the claimant may have emphysema, the credible evidence does not establish that it has resulted in significant functional loss as evidenced by clinical findings, values obtained from pulmonary function studies and other relevant evidence."

On what "credible" evidence is this finding based and why was contrary evidence rejected?

"8. The credible evidence, including x-ray and pulmonary function study results and other relevant evidence of record does not demonstrate a significantly impaired lung function as a result of a chronic respiratory or pulmonary condition or before June 30, 1973."

What evidence was found to be "credible" and what evidence was rejected and why was it considered incredible?

Similarly, as to Finding 9, it is unclear as to what "medical and other relevant evidence" constitutes the "preponderance" and why.

■■ It is not for us to weigh the evidence or consider it *de novo*. Neither can we fairly decide the issue of "substantial evidence" without some indication from the fact-finder as to the basis for his acceptance of certain evidence and his unexplained rejection of other evidence which appears equally credible. His "evaluation" appears to be a summary. His "findings", so-called, appear, rather, to be "conclusions". Inferences and conclusions may properly be drawn from the evidence. However, because of the generality of the findings and the lack of detail, we cannot fairly, on this record, discharge our duties. As previously stated, it is not the function of this Court to hold a trial *de novo*. It is, however, our duty to see that the Secretary does not disregard significant portions of the record

in reaching his decision. In a case involving these complications, the Court is entitled to findings that are as comprehensive and analytical as feasible. *Baerga v. Richardson,* 500 F.2d 309, 312 (3d Cir. 1974); *Boyd v. Folsom,* 257 F.2d 778 (3d Cir. 1958); *Lloyd v. Matthews,* 413 F.Supp. 1161 (E.D.Pa. 1976).

Accordingly, we shall remand the record for further consideration in accordance herewith, with leave to either party to submit additional evidence.