**Frank PUTSAKULISH, Plaintiff,**

v.

**Joseph A. CALIFANO, Secretary Health, Education and Welfare, Defendant.**

Civ. A. No. 77–635.

United States District Court,
W. D. Pennsylvania.

March 31, 1978.

Timothy P. Creany, Ebensburg, Pa., for plaintiff.

Asst. U. S. Atty. Stephen I. Galdring, Pittsburgh, Pa., for defendant.

OPINION

SNYDER, District Judge.

The Plaintiff, Frank Putsakulish, has appealed a final decision of the Secretary of Health, Education and Welfare denying his claim for black lung benefits. Under Section 205(g) of the Social Security Act (42 U.S.C. § 405(g)), this Court may enter judgment based on the pleadings affirming, modifying, or reversing the decision of the Secretary. The Secretary, however, must be affirmed so long as his decision is supported by "substantial evidence" in the record, for if so supported the Secretary's findings are here conclusive. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974), *cert. den.* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975); *Hess v. Secretary*, 497 F.2d 837 (3rd Cir. 1974). Inasmuch as we find there is no substantial evidence to support the Secretary's denial, we will refuse the Secretary's Motion for Summary Judgment and enter judgment for the Plaintiff.

I.

At the hearings, Plaintiff testified he was 58 years old, a high school graduate, married and with two dependent children. During the period covering 1935 to 1973, he worked for three years as an underground miner and for the balance of time he worked as a coal processor. He testified that he became short of wind after very little exertion, a condition which he had experienced for four or five years prior to stopping work. He told of going to his family physician, Dr. Martin, who x-rayed him and advised "get away from the mines

if you want to save what health you have." On January 1, 1973, Mr. Putsakulish became a Monitor for District 2 of the United Mine Workers and, in July of 1973, he was elected President of the Local. Since that time, he has occupied a desk position.

On September 24, 1974, at the request of his counsel, Mr. Putsakulish was examined by Dr. Robert F. Klemens, a Board Certified Internist,[1] who found "he has a sizeable degree of Coal Worker's Pneumoconiosis and this condition he has acquired during his many years of work in the coal mines has reached the point that he must be considered totally and permanently disabled from performing any type of useful work of the type noted above." Dr. Klemens took his own x-rays and found: "The lung fields contain both rounded and irregular densities, the most classifying feature is that of a rounded density 1 m.m. in diameter present in all 6 lung zones and these densities partly obscure the normal lung markings. The overall chest x-ray is compatible with Coal Worker's Pneumoconiosis, type p, profusion 2/2 involving 6 zones." We must note in passing that Dr. Klemens is also a Medical Examiner for the United States Department of Labor, Social Security Administration, and the Pennsylvania Occupational Disease Division.

Dr. Klemens' x-ray film was subsequently submitted to two radiologists, certified as "B" Readers of Coal Miners' X-rays by the National Institute of Occupational Safety and Health, Public Health Service.[2] Dr. Leonard J. Bristol found the films to be of very poor quality, commenting that it was "grossly underexposed and of very poor diagnostic quality." He, nevertheless, interpreted the film as being negative of Pneumoconiosis. Dr. Benjamin Felson found the film to be "unreadable", but probably normal.

1. In addition, Dr. Klemens specialized in the examination and treatment of individuals who had worked in the coal mines and was a Certified "A" Reader.

2. The Regulations under 42 C.F.R. 37.51(a) and (b) provide for different qualification of Certified "A" and "B" Readers for a proficiency in chest x-ray interpretation, with the "B" Reader being considerably more stringent.

Plaintiff's counsel then submitted an additional report from Dr. Klemens in which he stated that the chest x-ray was definitely compatible with Pneumoconiosis. The Administrative Law Judge in his determination assigned particular weight to the interpretations of Drs. Bristol and Felson and found that the evidence did not establish that the Plaintiff here was affected by Pneumoconiosis on or before June 30, 1973.

The testimony of Dr. Klemens explained an x-ray technique he uses which employs 120 to 125 thousand volts compared to the usual 60 to 80 thousand volts employed for chest x-rays in hospital x-ray departments. He said he used normal x-ray machines, but employs a special grid and a special fixed beam length, designed by him for the specific purpose of diagnosing dust diseases. Neither Dr. Bristol nor Dr. Felson were apprised of the difference in the x-ray techniques used by Dr. Klemens, nor were they asked to comment in any way upon the testimony given by Dr. Klemens.

In ventilatory testing on November 27, 1973, Plaintiff registered a forced expiratory volume at 1-second ($FEV_1$) of 2.9 liters and a maximum voluntary ventilation (MVV) of 75 liters per minute. On September 24, 1974, the $FEV_1$ measurement of Plaintiff was 3.3 liters and the MVV was 96 liters per minute. Mr. Putsakulish is 70 inches tall, and under the interim adjudicatory rule to qualify for an irrebuttable presumption of total disability, a miner of that height would have to record an $FEV_1$ measurement of 2.5 liters or less and an MVV of 100 liters or less per minute. A later pulmonary study done by Dr. Klemens on November 23, 1976 was found to be normal. Accordingly, Mr. Putsakulish does not qualify for an irrebuttable presumption of total disability.

## II.

The Federal Coal Mine Health and Safety Act of 1969 prescribes several presumptions for use in determining disability. Section 921(c)(3) allows an irrebuttable presumption of disability if a chronic dust disease of the lung is diagnosed by chest roentgenogram (x-ray) or other medical tests which could reasonably be expected to yield the same results. The Secretary has determined that the plaintiff failed to submit a positive x-ray from which a diagnosis of a chronic dust disease could be made. Since this decision is supported by substantial evidence, it must be affirmed.

Under Section 921(c)(4) of the Act, a rebuttable presumption arises if a miner was employed for 15 years or more in underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's claim, and it is interpreted as negative with respect to the requirements of Subsection (c)(3), and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment. This subsection allows the Secretary to rebut such presumption only by establishing that (A) such miner does not, or did not, have Pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

The specific issue before the Court is whether Plaintiff here is entitled, on the basis of the evidence of record, to a rebuttable presumption of total disability such as to shift the burden to the Secretary to show that the disability is the result of some cause other than Pneumoconiosis. If so, we must determine whether the Secretary has met that burden.

The Regulations provide that "other relevant evidence" to be considered in establishing a rebuttable presumption of total disability includes physical performance tests, medical tests, pulmonary function studies, any medical history, and evidence submitted by the miner's physician, as well as the miner's age, education and work experience. 20 C.F.R. §§ 410.414(c), 410.-422(c). The foregoing list is not exclusive however, as the Secretary has directed that whether or not the Pneumoconiosis in a particular case renders a miner totally disabled is to be determined from all the facts of the case. 20 C.F.R. §§ 410.414(b)(1), 410.422(c). Our Circuit has recognized the purpose of these presumptions to be enab-

ling claimants to obtain benefits despite absence of a clinical diagnosis of Pneumoconiosis as the exact cause of total disability, *Smakula v. Casper Weinberger, Sec. of HEW*, 572 F.2d 127, at 129 (3rd Cir., March 1, 1978), and that they clearly contemplate that lay evidence of a miner's chronic respiratory impairment may support a presumption of disability due to Pneumoconiosis.[3] *Id.* at 130; see *Bozwich v. Mathews*, 558 F.2d 475 (8th Cir. 1977).

▆ Plaintiff in the present case has offered substantial medical and lay testimony indicating the presence of a disabling respiratory or pulmonary impairment which has prevented him from continuing in his employment, and entitling him to a rebuttable presumption of Pneumoconiosis. The record does not indicate that the Administrative Law Judge considered this presumption.

▆ When a rebuttable presumption of disability applies under Section 921(c)(4), the burden shifts to the Secretary to show that the claimant's disability is not caused by Pneumoconiosis. 30 U.S.C. § 921(c)(4)(A); *Ansel v. Weinberger*, 529 F.2d 304 (6th Cir. 1976); *Henson v. Weinberger*, 548 F.2d 695 (7th Cir. 1977); *Bozwich v. Mathews, supra; Prokes v. Mathews*, 559 F.2d 1057 (6th Cir. 1977); *Pannell v. Califano*, 568 F.2d 773 (4th Cir. 1978); *Smakula v. Weinberger, supra.* Such a presumption may not be rebutted solely on the basis of a negative chest x-ray. 20 C.F.R. § 410.414(c); *Henson v. Weinberger, supra; Bozwich v. Mathews, supra; Prokes v. Mathews, supra; Pannell v. Califano, supra; Litwak v. Sec. of HEW*, 430 F.Supp. 586 (E.D.Pa.1977); *cf. Smakula v. Weinberger, supra.* Furthermore, where a ventilatory study does not establish that the miner is totally disabled, total disability may nevertheless be found if the other relevant evidence (§ 410.414(c)) establishes that the miner has a chronic respiratory or pulmonary impairment. *Id.*, 410.426(d).

▆ The Courts have upheld the intent of the Regulations that negative x-rays and ventilatory tests not be relied upon to rebut the presumption of 30 U.S.C. § 921(c)(4). In *Ansel v. Weinberger, supra*, the Sixth Circuit reasoned:

"The Secretary contends that the presumption was rebutted by evidence which established that Claude Ansel did not have pneumoconiosis. He relies on the negative findings of three radiologists who examined x-rays and the pulmonary studies. It is obvious that the negative x-rays may not be relied upon to rebut the presumption of section 921(c)(4). If he had been able to produce a positive x-ray, there would have been no need to invoke the presumption. The very existence of a negative x-ray is a prerequisite to reliance upon the presumption of pneumoconiosis as established by other evidence. Furthermore, under the 1972 amendment, negative x-ray evidence may not be the sole basis for a denial of benefits. 30 U.S.C. § 923(b). Nor do we believe the presumption of Section 921(c)(4) can be rebutted by showing that pneumoconiosis was not established by pulmonary function studies. The regulation which establishes the levels required for a finding of disabling pneumoconiosis on the basis of a ventilatory study does not purport to provide proof of the nonexistence of pneumoconiosis. Once Claude Ansel produced evidence which entitled him to the presumption of Section 921(c)(4), that presumption could be rebutted only by establishing that he did not have pneumoconiosis, there being no contention that his impairment did not arise out of employment in the mines. . . . [i]t appears that the Secretary would have been required at least to produce a medical opinion that Mr. Ansel did not have pneumoconiosis in order to rebut the presumption." 529 F.2d at 309–10.

---

**3.** Although the case dealt with survivor's benefits, the test for a rebuttable presumption of disability is identical, whether the claim is on behalf of the miner or his survivor, with the exception that where the miner is deceased, the regulations permit persons with knowledge of his physical condition to testify in his place. 20 C.F.R. §§ 410.414(c), 410.454(c).

It follows that a medical opinion based only upon a negative x-ray cannot rebut the presumption, particularly where that opinion is based upon an x-ray which the readers found unreadable. As the *Ansel* Court also noted:

"We believe that the district court failed to distinguish between 'true' statutory pneumoconiosis which can be directly proven by x-ray and biopsy, and 'presumed' pneumoconiosis which exists when an eligible applicant is totally disabled because of pulmonary or respiratory impairment but cannot prove 'true' pneumoconiosis. To hold that presumed pneumoconiosis is rebutted by evidence which merely precluded a finding of true pneumoconiosis would render the presumption of section 921(c)(4) a nullity. [Footnote omitted]" *Id.* at 310.

Other Courts which have had the opportunity to rule on the sufficiency of the evidence necessary to rebut the presumption have adopted the *Ansel* test. *Henson v. Weinberger, supra,* at 698–699; *Bozwich v. Mathews, supra,* at 480; *Prokes v. Mathews, supra,* at 1060–1061; *Pannell v. Califano, supra; Litwak v. Sec. of HEW, supra,* at 590.

The 1972 Black Lung Benefits Act, including Section 921(c)(4), was drafted reflecting a concern for the large number of applicants who were denied benefits for failure to produce a positive x-ray under the 1969 statute. As the Eighth Circuit recently noted:

"The legislative history of the 1972 Act clearly shows that Congress intended the 1972 Act to be liberally construed in favor of miners to insure compensation in worthy cases despite the extreme difficul-

ty of proving the existence of pneumoconiosis by clinically certain medical evidence. The Senate Report states: The Black Lung Benefits Act of 1972 is intended to be a remedial law—to improve on the 1969 provisions so that the cases which should be compensated, will be compensated. In the absence of definitive medical conclusions there is a clear need to resolve doubts in favor of the disabled miner or his survivors. [S.Rep. No.743, 92d Cong. 2d Sess. (1972), reported in (1972) U.S.Code Cong. & Adm. News, at 2315]" *Bozwich v. Mathews, supra,* 558 F.2d at 479.

Mr. Putsakulish has worked in the mines for 38 years. He has testified that his doctor advised him to leave the mines for his health. Dr. Klemens has testified after a medical examination that in his opinion, Mr. Putsakulish is totally disabled. The Plaintiff has also testified about the difficulty he experiences with any physical exertion, his coughing fits, and his difficulty in sleeping. This testimony is supported by the observations of Dr. Klemens. The Plaintiff left the coal mines because he could no longer perform the job. He is entitled to a rebuttable presumption of disability under 30 U.S.C. § 921(c)(4).

The Secretary has failed to come forward with even a scintilla of evidence to rebut the presumption. He has merely shown that there is substantial evidence that Mr. Putsakulish was not entitled to the irrebuttable presumption under § 921(c)(3), because he failed to produce an x-ray which three doctors can diagnose as showing Pneumoconiosis. This is not sufficient evidence to conclude that the Plaintiff here is not disabled due to Pneumoconiosis.[4]

4. We also note that the Third Circuit has recognized the duty of the Administrative Law Judge in a non-adversary proceeding such as this one to solicit testimony and steer a claimant to do so. *Hess v. Sec. of HEW,* 497 F.2d 837 (3rd Cir. 1974).

The District Court for the Eastern District of Pennsylvania recently stated:

"The black lung benefits statute is avowedly remedial, and the Secretary is under a corresponding duty to effectuate the policy of the Act by, among other things, assisting the

claimant where necessary in order to develop a meaningful and fair record." *Lloyd v. Mathews,* 413 F.Supp. 1161, 1162, n. 1 (E.D. Pa.1976).

The Eastern District stated in another case that it is the duty of the Court to see that the Secretary does not disregard significant portions of the record in reaching his decision. *Litwaitis v. Mathews,* 427 F.Supp. 458 (E.D.Pa. 1976). The Secretary could properly have subpoenaed the records of this claimant's personal physician, including the x-ray taken at the

We find that the Administrative Law Judge failed to invoke a rebuttable presumption in favor of Frank Putsakulish in accordance with 30 U.S.C. § 921(c)(4). Since there is no evidence in the record that the Secretary could rebut this presumption, the Secretary's Motion for Summary Judgment will be denied, the decision of the Secretary will be reversed, and judgment will be entered for the Plaintiff. The case will be remanded for entry of an award of disability benefits in accordance with this Opinion.

An appropriate Order will be entered.

time, and obtained the doctor's testimony as to the extent of claimant's disability. Instead, the only testimony in this record about that medical examination which originally convinced Putsakulish to leave his job is the miner's own recollection of his doctor's advice. Where medical opinions were in conflict as to a diagnosis based upon an x-ray, as in this case, the earlier x-ray might have enabled the claimant to establish an irrebuttable presumption under 30 U.S.C. § 921(c)(3) such as to entitle him to benefits regardless of any other evidence the Secretary might introduce.

Furthermore, the Secretary has published a list of alternative medical tests in the Appendix to the Regulations which may be employed to demonstrate total disability. The record is devoid of any evidence that the claimant was made aware of these tests or of the duty of the Social Security Administration to pay for them. See: S.Rep.No.92–743, 92d Cong., 2d Sess., 2 U.S.Code Cong. & Admin.News (1972) at pp. 2319–2320; *Prokes v. Mathews, supra*, at 1062–1063.