39 F.3d 1182
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jennie MILLER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-2189.
 United States Court of Appeals, Sixth Circuit.
 Nov. 2, 1994.
 
 Before: KENNEDY, WELLFORD, and NELSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Peggy R. Miller, now deceased, filed a claim for social security disability benefits in September, 1988.[1] This case has been reviewed by five other persons or bodies, all of whom have concluded that the denial of benefits was appropriate.[2] After reviewing the record once again, we too, find that substantial evidence supports the judgment of denial of benefits.
 
 I.
 
 2
 Prior to making a claim for disability benefits, Miller had worked in a variety of low-skill jobs, including as an assembler (from 1986-88, 1983-84) and a cleaning person. Although she reported a twelfth-grade education, IQ scores placed her in the "borderline range of intellectual ability."
 
 
 3
 Miller, who was overweight, based her disability claim on severe swelling of her legs, which she claims rendered her unable to work. All of the doctors document that her legs were swollen and diagnosed the illness as variety of types of edema ("an accumulation of an excessive amount of watery fluid in cells, tissues, or serous cavities", Steadman's Medical Dictionary, 5th ed., p. 445).
 
 
 4
 There is a dispute as to whether Miller also suffered from thrombophlebitis (swelling resulting from a clot in the cardiovascular systems formed during life from constituents of blood). If she suffered from thrombophlebitis, one probable treatment would require keeping her legs elevated so that the fluid would drain from her legs. The medical expert witness offered by the government, Dr. Lewis, concluded that Miller did not suffer from thrombophlebitis, and that the main cause for the swelling was caused by Miller's obesity (at one point, although only 5'2" tall, she weighed 234 pounds). Dr. Kopmeyer also agreed with the expert medical witness testimony as to the cause of the swelling, and stated that "the best long term treatment plan for this individual would be significant weight loss of at least 60 pounds...." Although the expert medical witness concluded that the plaintiff should keep her legs elevated for the treatment of lymphedema, he denied that she suffered from thrombophlebitis or needed to keep her legs elevated above her heart.
 
 
 5
 Three other doctors--Dr. Highland, Dr. Wallace, Dr. Borofsky--testified that Miller suffered from periodic episodes of thrombophlebitis, or vascular problems. Two of these doctors--Dr. Highland and Dr. Wallace--concluded that Miller should keep her legs elevated above her heart for substantial periods of time. Plaintiff, however, failed to present Dr. Wallace's testimony at the ALJ hearing, but she did present Dr. Highland's diagnosis. Plaintiff then appealed to the district court, seeking to bring in Dr. Wallace's report to rebut the testimony given at the ALJ hearing by the government's medical expert witness.
 
 
 6
 Almost all of the doctors prescribed Jobst elastic stockings, but it does not appear that the plaintiff followed their advice. She claims to have worn them for a while from November, 1990, until April, 1991, but stopped after her leg became infected. Nor did the plaintiff regularly wear the orthopedic shoes that Dr. Highland prescribed for her.
 
 
 7
 Although her swollen legs limited her ability to stand for a long period of time, Miller estimated that she could lift objects that weighed up to ten pounds, sit for thirty minutes, stand for up to twenty minutes, and walk short distances at a time. Miller claimed that she had problems climbing stairs, but admitted that she could climb the 13 to 15 stairs to get to and from her apartment on a daily basis. Miller testified that she left her apartment on a daily basis in order to drive her car, dine out, go shopping for personal items, and occasionally for groceries, visit with friends, and occasionally attend church services. When at home, Miller, who lived alone, performed some light cleaning but spent much of her day watching television, listening to the radio, or talking on the phone with friends and relatives. Miller claimed that she required the help of her friends to get in and out of the bathtub, as well as with some cleaning chores and shopping.
 
 
 8
 The ALJ concluded that she did not suffer from thrombophlebitis, but concluded that Miller suffered from a combined number of ailments, including respiratory problems, limited IQ, low skills, and lymphedema. The ALJ adopted medical expert witness testimony that Miller could perform some sedentary work since she was eligible for about 5,000 assembly and visual inspection jobs and 800 light industry jobs in the Detroit area.
 
 II.
 
 9
 We find no basis for error in the exercise of discretion not to consider the later evidence obtained after the ALJ's decision. See Casey v. Secretary of HHS, 987 F.2d 1230, 1233 (6th Cir.1993). Even if we were to consider this evidence, we conclude that Dr. Wallace's opinion is, in essence, the equivalent of Dr. Highland's view of Miller's condition. The ALJ was also aware of Miller's limited intellectual ability. Thus, this evidence, even if considered, would not have made a material difference in the outcome.
 
 III.
 
 10
 This court's review of the Secretary's decision is limited to an inquiry whether the Secretary's findings are supported by substantial evidence. McCormick v. Secretary of HHS, 861 F.2d 998, 1001 (6th Cir.1988). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Secretary of HHS, 987 F.2d 1230, 1233 (6th Cir.1993). Furthermore, it is the Secretary, rather than the court, who "is charged with the duty to weigh the evidence [and] to resolve material conflicts in the testimony." Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir.1990).
 
 
 11
 There is substantial evidence to support the ALJ's decision. First, the government's medical expert witness testified that the most effective remedy for Miller's swollen leg condition was to wear Jobst elastic stockings, which she had been advised to do as early as 1982, but only complied for a limited time between November 1990 and April 1991. Other physicians had prescribed various treatments, and the record is replete with examples of Miller ignoring their recommendations. See Henry v. Gardner, 381 F.2d 191, 195 (6th Cir.), cert. denied, 389 U.S. 993 (1967) ("An impairment that can be remedied by treatment will not serve as the basis for a finding of disability.").
 
 
 12
 Second, there were serious credibility concerns surrounding Miller's testimony. Miller testified that she had been elevating her legs above her heart level for about 90% of each day since 1984. When asked by the ALJ how she had managed to do this since 1984 when she had held a full-time job until 1988, Miller responded that she did not understand the question.
 
 
 13
 Moreover, Miller's physical activities do not suggest she is incapable of doing sedentary work. Although there are some limitations on her ability to stand for long periods of time, she testified she can lift up to ten pounds regularly, sit for up to 30 minutes at a time, and walk a block. She regularly went out while she was unemployed, and she was able to climb the 13 to 15 steps leading to her apartment.
 
 
 14
 Last, the vocational expert testified that there were approximately 5,000 sedentary jobs in the Detroit area that Miller could perform, and 800 light industry jobs. Therefore, based on the entire record before the ALJ, we conclude that there was "substantial evidence" for the ALJ's decision.
 
 IV.
 
 15
 According, we AFFIRM the decision of the Secretary and the district court to deny benefits.
 
 
 
 [1]
 Jennie Miller now pursues the claim as fiduciary of the original plaintiff's estate
 
 
 [2]
 Administratively, the Secretary denied her claim, and in a hearing before an administrative law judge ("ALJ"), ALJ William D. Boham found her "not entitled to a period of disability" on March 27, 1992, in a fifteen-page decision. Miller appealed to the Appeals Council, which, after declining to consider additional medical evidence, found the ALJ's "decision ... supported by the evidence of record" on October 19, 1992. She appealed to the district court before her death in April of 1993 due to a heart condition
 I. After reviewing the administrative record once again, Magistrate Judge Paul J. Komines, on March 11, 1993, filed a thirteen-page report and recommendation concluding that "the record supports the findings that (1) plaintiff had the residual functional capacity to perform sedentary work (with restrictions), and (2) therefore she was not disabled." The magistrate judge recommended affirming the Secretary's final administrative decision denying benefits. After plaintiff's death, an objection to this report and recommendation was filed, together with a motion for remand to consider the later evidence.
 II. After "a thorough analysis of this matter," the district court affirmed the magistrate judge's report and recommendation, denying also the motion for remand. This timely appeal ensued.