Ann E. WATERS, Plaintiff-Appellant,

v.

John W. GARDNER, Secretary of Health, Education and Welfare of the United States of America, Defendant-Appellee.

No. 25086.

United States Court of Appeals, Ninth Circuit.

Dec. 17, 1971.

Wade J. Dahood (argued), of Knight, Dahood & MacKay, Anaconda, Mont., for plaintiff-appellant.

Thomas J. Press (argued), William D. Ruckelshaus, Asst. Atty. Gen., Kathryn H. Baldwin, Ralph A. Fine, Dept. of Justice, Washington, D. C., Otis L. Packwood, U. S. Atty., Butte, Mont., for defendant-appellee.

Before BROWNING, CARTER and HUFSTEDLER, Circuit Judges.

PER CURIAM:

This is an action under Title II of the Social Security Act, 42 U.S.C. § 401ff, for judicial review of a final decision of the Secretary of Health, Education and Welfare denying appellant's application to establish a period of disability and an award of employment disability insurance benefits.

Appellant filed her application with the Social Security Administration on January 13, 1964, alleging that because of a back injury she became unable to work on December 27, 1960. Her application was denied. Upon reconsideration and examination, the Division of Vocational Rehabilitation of the Montana State Board of Education also found appellant was not disabled. Appellant requested a hearing before the Bureau of Hearings and Appeals of the Social Security Administration. The hearing examiner considered the case de novo and found her not disabled. The Appeals Council of the Bureau of Hearings and Appeals affirmed the hearing examiner's decision.

Appellant sought review in the United States District Court under the provisions of section 205(g) of the Act (42 U.S.C. § 405(g)). On October 25, 1967, the district court remanded the case to the Secretary for reconsideration and the taking of further evidence, if necessary.

A new administrative hearing was held and further evidence taken. The hearing examiner concluded that appellant was not entitled to a finding of disability. The Appeals Council adopted that decision as its own on July 22, 1968, after another review.

Appellant returned to the district court, which held that the Secretary had complied with the terms of the remand and that there was sufficient evidence in the record to support the Secretary's findings. Accordingly, the district court denied relief. This appeal followed.

We have concluded that the decision below should be affirmed.

■ It is clear that appellant suffered functional impairment due to back injury, spondylolisthesis, degenerative intervertebral disc disease, arthritis, psychogenic and emotional overlay, and other conditions. However, the mere presence of functional impairment is not enough. Celebrezze v. O'Brient, 323 F. 2d 989, 990 (5th Cir. 1963); Henry v. Gardner, 381 F.2d 191, 195 (6th Cir. 1967). As the court said in *Henry*, "The fact that a person is suffering from a diagnosed disease or ailment is not sufficient in the absence of proof of its disabling severity to warrant an award of benefits." *Id.* at 195.

To qualify for disability benefits a claimant must demonstrate that he is unable to "engage in *any substantial gainful activity*" and that this inability is attributable to a "medically determin-able physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[1] A "physical or mental impairment" within the meaning of the Act "is an impairment that results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."[2]

■ We agree with appellant that so long as the causes of the impairment are "demonstrable" by techniques described in the statute they need not be established by "objective" proofs (*see* Moore v. Finch, 418 F.2d 1224, 1226 (4th Cir. 1969)); but nothing in the record suggests that the Secretary imposed such a requirement. On the other hand, under the Social Security Amendments of 1967,[3] the Secretary need not accept a claimant's subjective complaints alone as establishing sufficient impairment.[4]

■ Nor is there merit in appellant's contention that her potential difficulty in obtaining new employment established the presence of compensable disability. The Act, as amended in 1967, emphasizes the claimant's job capability[5] and not the availability of a job in the claimant's region, as does the usual unemployment compensation statute. *See, e. g.,* Mullins v. Gardner, 396 F.2d 139, 140 (6th Cir. 1968); Gentile v. Finch, 423 F.2d 244, 246–247 (3d Cir. 1970.[6] There is substantial evidence in

1. 42 U.S.C. § 423(d) (1) (A).

2. 42 U.S.C. § 423(d) (3).

3. P.L. 90–248, 81 Stat. 821 (1967).

4. 42 U.S.C. § 423(d) (5).

5. Section 423(d) (2) (A) provides that an applicant

   " . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work *which exists in the national economy, regard-less of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.* For the purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." (emphasis added).

6. The Seventh Circuit stated the point bluntly in Wright v. Gardner, 403 F.2d 646, 647 (7th Cir. 1968): "The 1967 Amendments to the Social Security Act

the record to support the Secretary's conclusion that work of specific, identified types which appellant could perform existed in several regions of the country. This is sufficient. 42 U.S.C. § 423(d)(2) (A).

■ We turn to the sufficiency of the evidence relating to appellant's physical and mental condition as of June 30, 1964, when she last met the Act's prior employment criteria. Any deterioration in her condition subsequent to that time is, of course, irrelevant. We conclude that the evidence was sufficient to support the Secretary's conclusion that at the crucial time appellant's physical and mental condition did not disable her from performing the type of light or sedentary work shown to be available by the vocational testimony.[7]

At least nine doctors evaluated appellant's condition. A majority placed her disability at less than 30 per cent. Only one thought her totally disabled, and, in an earlier report closer to the 1964 cutoff date, even he placed her disability at less than 50 per cent.

It is suggested that proper attention was not given to appellant's "psychological overlay," that is, to her mental and emotional condition as it affected her ability to work, given her physical impairments. We cannot agree.

The district court's remand to the Secretary was directed specifically to this problem. In ordering remand the district court pointed out that the Appeals Council had "not given any considerations to how these combined [physical and mental] conditions affect her ability to engage in substantial gainful activity." The court continued, "The Council stresses the refusal of plaintiff to undergo surgery. That refusal should be viewed in the light of the physical and mental condition of the plaintiff in reference to her age and abilities, and the reasonableness of her refusal."

Appellant concedes that on remand the hearing examiner did expressly exclude any reliance upon appellant's refusal to undergo surgery as reflecting adversely upon her claim of disability. She contends, nonetheless, that inadequate con-

---

make it clear, however, that a claimant for insurance benefits under the Act is not disabled within the meaning of the statute merely because he would not actually be hired for such work."

Appellant's contention that the 1967 amendments do not apply to her case is clearly incorrect. Section 158(e) of the Social Security Amendments of 1967, P.L. 90–248, 81 Stat. 821 (1967), provides:

"(e) The amendments made by this section shall be effective with respect to applications for disability insurance benefits under section 223 of the Social Security Act, and for disability determinations under section 216(i) of such Act, filed—

\*      \*      \*      \*      \*

(2) before the month in which this Act is enacted if the applicant has not died before such month and if—

(A) notice of the final decision of the Secretary of Health, Education, and Welfare has not been given to the applicant before such month; or

(B) the notice referred to in subparagraph (A) has been so given before such month but a civil action with respect to such final decision is commenced under section 205(g) of the Social Security Act (whether before, in, or after such

month) *and the decision in such civil action has not become final before such month"* (emphasis added).

Obviously, a final decision in appellant's civil action was not rendered prior to January 1968.

7. 42 U.S.C. § 405(g) provides in part, "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." *See* Gardner v. Wilcox, 370 F.2d 492, 494 (9th Cir. 1966); Mark v. Celebrezze, 348 F.2d 289, 292–293 (9th Cir. 1965). And, of course, questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary. Gardner v. Wilcox, *supra,* 370 F.2d at 494; Martin v. Finch, 415 F.2d 793, 794 (5th Cir. 1969); *see* Reyes Robles v. Finch, 409 F.2d 84, 87 & n. 4 (1st Cir. 1969).

Appellant relies upon Cohen v. Perales, 412 F.2d 44, opinion restated, 416 F.2d 1250 (5th Cir. 1969). That case differs from this in many significant respects, and, in any event, the decision of the Fifth Circuit, upon which appellant relies, was reversed by the Supreme Court. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

sideration was given to the "psychological overlay" factor because the hearing examiner did not order a further psychological evaluation of appellant, and because the Appeals Council did not comment on evidence relating to the psychological factor in its decision.

The record reflects a careful consideration by the hearing examiner of appellant's emotional problem both in the course of hearing and in the examiner's decision.

Dr. Gold was called as a witness and extensively questioned on this issue. Dr. Gold's testimony (and the hearing examiner's decision not to conduct a current psychiatric examination) is commented on in the hearing examiner's decision as follows:

"Dr. Gold further testified that the spondylolisthesis condition, based upon the evidence was a congenital condition rather than traumatic and that the combined effects of the claimant's lumbosacral strain superimposed on the spondylolisthesis condition and the psychological overlay associated with it, had not rendered Mrs. Waters totally disabled. . . .

Claimant's attorney's request for a current psychiatric examination was considered by the Hearing Examiner and after considering the request and review of the matter with Dr. Gold, the Hearing Examiner concluded that there was no indication of any further psychiatric evaluation necessary. Dr. Gold [concluded] 'that from a physical, emotional, mental, psychiatric point of view, there were certain jobs she could have done.' "

A vocational expert, trained in psychology and career guidance, was also examined on the issue. He stated that appellant's psychological overlay was not sufficiently severe to render her physical impairments disabling. He suggested numerous specific jobs she could perform and stated that any rehabilitation required for these positions would be only two to six weeks in length. He testified that jobs were available for one

with appellant's physical impairments and psychological overlay, and that persons with much greater impairments are regularly employed.

In his decision the hearing examiner summarized the district court's remand order and noted that the hearing was directed primarily to the areas identified in that order. He exhaustively analyzed the evidence bearing upon the combined physical and emotional elements of appellant's condition and concluded that appellant had not met "her burden of showing that at any time here material she was precluded from engaging in all substantial gainful activity by reason of a medically determinable physical, mental impairment or a combination of impairments . . . ."

The Appeals Council specifically adopted "the hearing examiner's findings of fact, inferences, and conclusions as set forth in his recommended decision." It is of no significance that the Council did not spell out its concurrence with the examiner in the particular respects to which appellant refers.

We agree with the district court that it is "apparent from the record that the examiner and Secretary fully considered this court's order of October 25, 1967, and made his findings based with this order in mind . . . ."

Finally, we do not understand appellant to claim that failure of the hearing examiner to order a current psychological examination of appellant on remand was in itself error vitiating the administrative decision. She would be precluded from doing so for she made no such contention in her administrative appeal.

Appellant may be contending that because of this omission there was no basis in the record for resolving the issue presented by the district court's remand order. But as we have pointed out, Dr. Gold and the vocational adviser testified directly to the issue of the combined effect of appellant's physical condition and emotional overlay upon her ability to hold substantial gainful employment. The record also contained an elaborate

report by a psychiatrist, Dr. Gladys Holmes, submitted at the hearing before remand. It is true that Dr. Holmes' report was directed to whether appellant suffered from disabling psychosis or neurosis and not toward resolving the quite different question of the impact of "psychological overlay" upon appellant's ability to hold gainful employment. But Dr. Holmes' report encompassed much more than her ultimate diagnosis. It included an extensive description of the nature and intensity of appellant's emotional problems.[8] This data, compiled in 1965, shortly after the crucial date in 1964, could be and was used by Dr. Gold to arrive at a conclusion on the relevant issue. In view of the detail available in Dr. Holmes' report regarding appellant's condition at the critical time, it was not unreasonable for Dr. Gold and the hearing examiner to conclude that a report on her current psychological condition, some three and a half years after the relevant date, would be of little help.

Affirmed.

---

8. Dr. Holmes' report included the following:

"*Psychiatric Examination.* This woman talks freely and is friendly, cheerful and lady-like in her manner. She came down here on the bus by herself and is visiting with her daughter. She said that she does not get out much because she is not able to drive her car and consequently she has to walk and is unable to do so. She spends most of her time sitting around the house, reading, crocheting some, watching T.V. and visiting with her daughter and grandchildren. She said that her left hand is sometimes stiff and sore and she is not able to crochet very much.

She is depressed and crying quite often and has to take medication to sleep on. In general her memory and information is good. She seemed to take an active interest in both the town and the community. She was completely oriented. Her thinking ability was normal and her ideas were coherent and relevant. Her judgment seems good and although she is frequently ill, she tries to do the best she can with simple remedies and says she tries not to complain very much, although she is in pain a good deal of the time. Although she complains of pain and weakness, she does not show any loss of weight, nor does she appear to be an invalid. Emotionally she seemed quite stable and did not present any mood variations, although she admitted being depressed at times. She has no suicidal ideas, is not anxious or tense, and feels that she would be much better off if she could work, but says that it is impossible for her to do any of the work that she has done previously because she cannot bend or stand very long on her feet. She would be glad to work if she could be trained in some job that she was capable of doing and had discussed the possibility of Vocational Rehabilitation Counseling. No delusions or hallucinations were elicited and those suggested were denied. She had no suspicious or antagonistic attitudes. She gets along with people and likes to go out particularly to Church and to visit her children. No paranoid ideas were expressed. Although she talked considerable about her pains and aches, she could be easily diverted from this."