**Thomas BROWN, Plaintiff,**

v.

**Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Defendant.**

**Civ. No. C–70 2747.**

United States District Court, N. D. California.

Nov. 20, 1972.

John C. Smith, Jr., Levy & Van Bourg, A Professional Corporation, Oakland, Cal., for plaintiff.

James L. Browning, Jr., U. S. Atty., Brian B. Denton, Asst. U. S. Atty., San Francisco, Cal., for defendant.

## MEMORANDUM AND ORDER

PECKHAM, District Judge.

This action is brought under section 205(g) of the Social Security Act (42 U.S.C. § 405(g)) to review a final decision of the Secretary of Health, Education, and Welfare disallowing plaintiff's application for the establishment of a period of disability and for disability insurance benefits under §§ 216(i) and 223 of the Act (42 U.S.C. §§ 416(i), 423). After an initial denial and hearing, plaintiff's application was denied July 31, 1970, based upon the hearing examiner's finding that he was not under a disability within the meaning of the Act. Plaintiff made application to this court for review of the Secretary's final decision of denial, and on stipulation of the parties the case was remanded to the Secretary for reconsideration. After a supplemental hearing and decision again finding that plaintiff was not under a disability, the Secretary adopted the decision that plaintiff is not entitled to a period of disability or disability insurance benefits under the Act. The Secretary now moves for summary judgment affirming his decision.

### FACTS

Plaintiff is 56 years old and has a third grade education. He worked until 1955 as a cleaner and presser, and from 1955 to 1967 as a construction laborer. On April 14, 1967, plaintiff, while astride a lawn mower, sustained a traumatic rupture of the urethra. Despite corrective surgery, problems of difficulty urinating, pain in the lower abdomen, and dribbling after urinating remain. Plaintiff claims a disability dating from July 17, 1969, when the pain in his abdomen and frequency of urination made it impossible for him to continue working. The issue on review is whether plaintiff has established a "disability" within the meaning of 42 U.S.C. § 423(d)(1)(A):

> "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

There is no dispute about the fact or extent of the injury; the parties differ over whether there is employment available which plaintiff can pursue despite his handicap. The standard to be applied on this issue is found at 42 U.S.C. § 423(d)(2)(A):

". . . he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country."

The finding of the Secretary that plaintiff does not suffer from a disability within the meaning of the Act is conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g).

## THE PROCEEDINGS BELOW

Two separate hearings were held at both of which plaintiff testified. Testimony was also taken of a vocational expert and one examining physician, and other medical reports were accepted into evidence. Plaintiff's testimony as to the frequency with which he must urinate during the day changed from the first hearing to the second. The hearing examiner at the supplemental hearing chose to believe the testimony given at the first hearing, that plaintiff must use a bathroom four to five times during the course of a working day (Tr. 150). The hearing examiner discredited plaintiff's testimony at the later hearing that urinary frequency was on the order of once every 10 to 15 minutes, noting in addition that even accepting such testimony, it appeared that plaintiff could take remedial action to decrease the frequency (Tr. 147–149). The credibility of plaintiff's testimony is a matter for the hearing examiner to decide. Gardner v. Wilcox, 370 F.2d 492, 494 (9th Cir. 1966). Given the finding that plaintiff must visit a restroom four to five times during the course of a working day (presumably approximately 9 hours), is there substantial evidence in the record to support the hearing examiner's conclusion that plaintiff is employable?

## SUFFICIENCY OF THE EVIDENCE

The hearing examiner found the following:

1) That despite his urinary problem, plaintiff could "engage in sustained employment with that problem by urinating immediately before beginning work in the morning, during his morning coffee break, during lunch time, during his afternoon coffee break, and immediately after finishing work in the afternoon."

2) "That claimant at all times since July 17, 1969 has had the residual physical capacity for substantial gainful activity as a caretaker, groundskeeper and gardener, occupations which he has performed in the past."

3) That plaintiff has sufficient skills and physical capacity for "light labor jobs, including janitorial work in office buildings and in public toilets, which jobs exist in significant numbers in the national economy . . . ." (Tr. 150).

The above findings are based on the medical evidence and testimony at the supplemental hearing of a vocational expert, Howard Wolcott (Tr. 178–198). In his questioning of Wolcott, the hearing examiner focused upon plaintiff's ability to perform work similar to that he had performed in the past, or which he admitted performing around his house (gardening), based on the alternative frequencies of urination reflected in plaintiff's testimony. We will consider

here Wolcott's testimony based on a frequency of four to five times a day only.[1]

The schedule of restroom visits outlined in the hearing examiner's first finding above came out of testimony by Wolcott as to the maximum number of absences from one's station that an employer would permit under regular working conditions (Tr. 180–181). Accepting, arguendo, the degree of punctuality the hearing examiner seems to assume, the question becomes whether jobs are available which plaintiff can perform and which provide the facilities required by his urinary problem. We turn, therefore, to the jobs mentioned by the hearing examiner in his findings.[2]

The jobs of caretaker, groundskeeper, and gardner were considered by Wolcott not to afford plaintiff the facilities his urinary problem requires. Planting and tending shrubs along the highway (Tr. 185–86) or keeping up the grounds in cemeteries (Tr. 186) were briefly considered and rejected as possibilities. The only bit of evidence supportive of the hearing examiner's conclusion that plaintiff could find suitable work as a groundskeeper is Wolcott's statement that

> "There are related types of jobs such as park caretaker that would be ah, things that he would be close enough to bathroom facilities ah, that ah, these would be possible. For instance the City of San Francisco out here at Golden Gate Park there's a number of bathrooms within walking distance. They have ah, hired quite a staff of ah, groundskeepers. . . ." (Tr. 193).

Planting shrubs along public highways was work plaintiff had performed for two months in 1968; groundskeeping in

public parks was not. (Tr. 144–45). The record shows that plaintiff is not able to work at planting shrubs along highways. Although restrooms may be sufficiently close by and the supervision such that plaintiff would be able to work at groundskeeping in a public park, no evidence other than the above was given that such jobs are available in substantial numbers in any region of the country. Without such a showing, we cannot hold that the decision of the hearing examiner, and hence of the Secretary, is supported by substantial evidence.

■ The Secretary need not, of course, show that plaintiff would be hired to perform available work; the 1968 amendment to 42 U.S.C. § 423(d) makes this clear. Waters v. Gardner, 452 F.2d 855, 857–858 (9th Cir. 1971); Gentile v. Finch, 423 F.2d 244, 247–248 (3rd Cir. 1970).[3] However, once plaintiff has shown his inability to perform work he previously pursued, the Secretary has the burden of coming forward with some evidence of other available work.

> "The only change wrought by the 1967 [sic] Amendments relates to the kind of evidence that must now be adduced. The Secretary need not show that the claimant would actually be hired. But he must show that there are jobs in the national economy that the claimant can do." Meneses v. Secretary, 143 U.S.App.D.C. 81, 442 F.2d 803, 806 (1971).

The Secretary has not met his burden with respect to groundskeeping work. *Compare* Miles v. Secretary, 322 F.Supp. 1132, 1139 (D.Tenn.1971) and Starvis v. Finch, 315 F.Supp. 854, 860 (D.Pa.1970) *with* Osborne v. Cohen, 409 F.2d 37–39

---

1. Based on a frequency of every 10 to 15 minutes, both Wolcott (Tr. 195) and the hearing examiner (Tr. 148) concluded that plaintiff would be unemployable.

2. We assume, with the hearing examiner, that by wearing a bag, plaintiff can avoid spending 15 to 20 minutes drain-

ing his bladder during each visit to the restroom. See Tr. at 168, 146, 149.

3. In *Waters* the court found substantial evidence that "work of specific, identified types which appellant could perform existed in several regions of the country."

(6th Cir. 1969), Baker v. Gardner, 362 F.2d 864, 868–870 (3rd Cir. 1966), and cases cited therein, and Tinsley v. Finch, 300 F.Supp. 247, 255–256 (D.S.C.1969). *See also* Branch v. Finch, 313 F.Supp. 337, 347 (D.Kan.1970).

The other types of work as to which any evidence of availability was offered were janitorial work and washroom attendant. Regarding the first, Wolcott testified that the freedom of movement required by plaintiff's condition could be had only where plaintiff worked as an independent contractor. (Tr. 187). However, Wolcott further testified that plaintiff did not possess the requisite skill to carry on work as an independent contractor. (Tr. 191–92). With respect to jobs as an attendant in a washroom, Wolcott stated that "these are relatively few in number: and that plaintiff's continuous neat appearance was a major factor in his ability to perform the work (Tr. 187–88). The testimony of Wolcott, the only evidence presented to the hearing examiner on the question of available work, cuts directly against the finding (3) above. For the reasons already set out, we find that the Secretary has failed to carry his burden with respect to janitorial work or work as a washroom attendant.

"Here the evidence is that plaintiff is [56], unskilled, unschooled, unlettered." Zeno v. Secretary, 331 F.Supp. 1095, 1097 (D.Puerto Rico 1970). Plaintiff has proved substantial incapacity and meets the special earnings requirements of the Act (Tr. 144). The Secretary has failed to show that there is employment available to plaintiff in substantial numbers in the national economy, and which plaintiff can perform. The decision of the Secretary denying plaintiff's disability under the Act is not supported by substantial evidence based on a reading of the record as a whole. Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The motion of the Secretary for summary judgment is therefore denied. This case is hereby remanded to the Secretary for action consistent with this opinion.