David MORGAN, Plaintiff–Appellant,

v.

COMMISSIONER OF THE SOCIAL SE-CURITY ADMINISTRATION; Kenneth S. Apfel, Commissioner, Social Security Administration, Defendant–Appellee.

No. 97–36142.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1998.

Decided Feb. 25, 1999.

Kathryn Tassinari, Eugene, Oregon, for the plaintiff-appellant.

John K. Webb, Assistant Regional Counsel, Social Security Administration, Seattle, Washington, for the defendant-appellee.

Before: NOONAN, THOMPSON and TROTT, Circuit Judges.

Opinion by Judge DAVID R. THOMPSON; Dissent by Judge NOONAN.

DAVID R. THOMPSON, Circuit Judge:

Plaintiff-appellant David Morgan ("Morgan") appeals the district court's judgment affirming the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title XVIII of the Social Security Act, 42 U.S.C. § 423 and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

Morgan contends the Administrative Law Judge ("ALJ") erred in rejecting Morgan's testimony as to his mental condition, and in rejecting the opinions of his treating psychiatrist and examining psychologist in favor of the opinion of a nonexamining medical advisor.

We conclude that the ALJ gave clear and convincing reasons, supported by the record, for rejecting Morgan's testimony. We also conclude that the ALJ gave specific, legitimate reasons for rejecting the opinions of Morgan's treating psychiatrist and examining psychologist, and that those reasons are based on substantial evidence in the record. Accordingly, we affirm the denial of benefits.

## BACKGROUND

Born in 1950, David Morgan is a high school graduate who also earned an Associate of Arts degree in math and history. Morgan worked for eleven years as a grocery store retail clerk until he was fired in 1988 because of a fight with a supervisor. He has not been employed since 1988. In February 1994, after threatening suicide, Morgan entered the Lane Psychiatric Hospital. During his hospitalization, Morgan reported a recent history of drinking two to three beers per day, and admitted to cannabis-marihuana use. Upon discharge, Morgan's medical examiners diagnosed him as suffering from a major depressive disorder, alcohol abuse, cannabis abuse, a history of amphetamine and opioid abuse, and a schizoid and/or dependent personality.

Between March 1994 and March 1995, Dr. Michael Reaves, M.D., evaluated Morgan's mental health at least six times. He observed Morgan to be "relatively articulate, intelligent [and] ... to have a rather quick wit about him." Dr. Reaves repeatedly diagnosed Morgan with recurrent major depression, alcohol abuse, cannabis abuse, and provisional schizoid personality disorder. Dr. Reaves rated Morgan's Global Assessment of

Functioning (GAF) at 45/55.[1] Dr. Reaves prescribed the continued use of antidepressive medication.

Between March 1994 and March 1995, Dr. Sally Grosscup, Ph.D., also performed a series of psychological evaluations of Morgan. Dr. Grosscup diagnosed Morgan with "Major Depressive Disorder, single episodes; severe, without psychotic features" and concluded that he had "a moderate to high suicide risk." In addition, she found repeatedly that Morgan suffered from alcohol dependence, cannabis abuse, amphetamine abuse, opioid abuse, nicotine dependence, inhalant abuse, and a probable borderline personality disorder. Dr. Grosscup assigned Morgan a GAF score of 49, with a high of 61 during the previous year. In one evaluation, Dr. Grosscup opined that "[Morgan]'s prognosis for change is extremely poor, given his probable character disorder. His condition has been long term and so far he only moderately responds to medication. He is probably functioning at the highest level of his current capacity."

Morgan applied for DIB and SSI on March 18, 1994, around the time Dr. Reaves and Dr. Grosscup began evaluating him. After his applications were denied initially and upon reconsideration, Morgan requested a disability hearing before an ALJ.

At the April 12, 1995 disability hearing, Dr. William McConochie, Ph.D., testified as a medical expert. Dr. McConochie stated that the medical evidence demonstrated a history of major depression "characterized by less than four years of the several symptoms listed, but including a sleep disturbance, difficulty concentrating, and thoughts of suicide."

Dr. McConochie recognized that other medical examiners made a provisional diagnosis of personality disorder, but stated that he believed the medical evidence did not support this diagnosis. He stated that he agreed with the various professionals who considered Morgan an alcoholic, and that he considered Morgan's alcoholism and cannabis abuse the most important diagnoses. Dr. McConochie noted that, while Morgan's depression probably played a part in the primary diagnosis, it was more likely a side effect of the alcoholism and cannabis abuse. When asked about the "B" criteria of listing 12.00 of the Social Security Regulations,[2] Dr. McConochie testified that Morgan did not meet the listings, having only slight difficulties in maintaining social functioning and never or seldom having deficiencies of concentration, persistence, or pace. Dr. McConochie also testified that Morgan had no significant limitations on a Mental Residual Functional Capacity assessment, contrary to the opinions of Dr. Reaves and Dr. Grosscup.

The ALJ issued a decision on August 24, 1995, denying Morgan's claim. In reaching his decision, the ALJ concluded that Morgan's allegations, both in his testimony and in his statements to the medical examiners, were not highly credible. The ALJ determined that clear conflict existed between Morgan's statements regarding the severity of his depression as he represented those symptoms and Morgan's behavior as observed under objective testing. This conflict between subjective testimony and objective medical evidence led the ALJ to conclude that Morgan's subjective complaints reflected a lack of credibility and a degree of exagger-

---

1. Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. A GAF between 41 and 50 indicates serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

2. The "B" criteria lists those functional limitations that claimants must demonstrate to meet the mental disorder listings. To meet Listing 12.04, Affective Disorders, a claimant's disturbance in mood must result at least two of the following:

(1) marked restriction of activities of daily living;

(2) marked difficulties in maintaining social functioning;

(3) deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

(4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

See 20 C.F.R. Part 404, Subpart P, Appendix 1, SS 12.04B(1)-(4).

ation. The ALJ discounted, therefore, any medical findings based on Morgan's subjective complaints, including the medical examiners' opinions regarding his ability to work.

Based on these determinations and other evidence in the record, the ALJ concluded that Morgan had severe impairments, but that the impairments did not meet or equal the requirements for disability, either individually or in combination. The ALJ concluded that Morgan retained the residual functional capacity to perform his past relevant work as a retail clerk, and therefore was not disabled within the meaning of the Social Security Act.

After the Appeals Council denied review of Morgan's claim, thereby making the ALJ's determination a final decision of the Commissioner, Morgan filed a complaint asking the United States District Court for the District of Oregon to review and set aside the Commissioner's decision. On November 7, 1997, United States District Judge Michael R. Hogan adopted the findings and recommendation of Magistrate Judge John P. Cooney, affirming the Commissioner's denial of Morgan's applications for benefits.

Morgan timely appeals the district court's decision. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## STANDARD OF REVIEW

■ We review de novo the district court's order affirming the Commissioner's denial of benefits. *See Travers v. Shalala,* 20 F.3d 993, 995–96 (9th Cir.1994). The Commissioner's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." *Magallanes v. Bowen,* 881 F.2d 747, 750 (9th Cir.1989) (quoting *Green v. Heckler,* 803 F.2d 528 (9th Cir.1986)). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995).

## DISCUSSION

Morgan contends the ALJ failed to provide clear and convincing reasons for rejecting Morgan's testimony of subjective symptoms. Morgan also argues the ALJ rejected the opinions of his examining psychologist and treating psychiatrist without providing specific and legitimate reasons. We disagree.

■ For the ALJ to reject Morgan's subjective complaints, he must provide "specific, cogent reasons for the disbelief." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995) (quoting *Rashad v. Sullivan,* 903· F.2d 1229, 1231 (9th Cir.1990)). Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. *See Lester,* 81 F.3d at 834; *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir.1989). If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. *See Bunnell v. Sullivan,* 947 F.2d 341 (9th Cir.1991). The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. *See Lester,* 81 F.3d at 834; *Dodrill v. Shalala,* 12 F.3d 915, 918 (9th Cir.1993); *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.1988). In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary. *See Yuckert v. Bowen,* 841 F.2d 303, 307 (9th Cir. 1988); *Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir.1982).

■ The ALJ provided clear and convincing reasons for rejecting Morgan's testimony. The ALJ pointed to specific evidence in the record—including reports by Dr. Reaves, the treating psychiatrist, and Dr. Grosscup, the examining psychologist—in identifying what testimony was not credible and what evidence undermined Morgan's complaints. For example, the ALJ noted that, contrary to Morgan's claims of lack of improvement, Dr. Reaves reported that Morgan's mental symptoms improved with the use of medication. The ALJ also commented upon contradictions between Morgan's reports to Dr.

Grosscup and his reports to Dr. Reaves regarding his activities. The ALJ also identified inconsistency among the Lane County Mental Health staff's observations and Morgan's denial of improvement in his condition and claims of contemplated suicide.

Morgan argues that the ALJ incorrectly determined that there was no evidence of his concentration problems in the psychological reports. Morgan points to several occasions when he complained of concentration problems to his examining physicians. Rather than determining that Morgan did not complain of concentration problems or that they did not exist in the record, the ALJ found that the examining psychologist's and treating psychiatrist's opinions were not supported by Morgan's complaints. The ALJ recognized that although Morgan "indicated that he had significant concentration problems and that he tends to 'drift' while doing tasks on a sustained basis, even yard work, an endeavor he previously acknowledged he could do well …, his mental status evaluations did not reveal such cognitive defects. On the contrary, they revealed superior intellectual ability."

■ Contrary to Morgan's claims of disability, the ALJ determined that Morgan's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child served as evidence of Morgan's ability to work. If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). Rather than misconstruing the examining physician's diagnosis of a "lack of motivation," as Morgan contends, the ALJ, in noting Morgan's daily activities, pointed to the contradictions between Morgan's reported activities and his asserted limitations as an issue of credibility.

■ Citing the conflict between Morgan's testimony of subjective complaints and the objective medical evidence in the record, and noting the ALJ's personal observations, the ALJ provided specific and substantial reasons that undermined Morgan's credibility.

"The inclusion of the ALJ's personal observations does not render the decision improper." *Sellard v. Shalala*, 37 F.3d 1506 (9th Cir. 1994), citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir.1985). "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation … and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Fair*, 885 F.2d at 603.

Morgan argues that the ALJ erred in rejecting the opinions of his treating psychiatrist and examining psychologist in favor of the nonexamining medical advisor. We reject this argument, however, because the ALJ gave legitimate and specific reasons, supported by the record, for rejecting the opinions of the treating psychiatrist and examining psychologist.

■ The opinion of a treating physician is given deference because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir.1987) (citations omitted). However, the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989); *Rodriguez v. Bowen*, 876 F.2d 759, 761–62 & n. 7 (9th Cir.1989). When a nontreating physician's opinion contradicts that of the treating physician-but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician-the opinion of the treating physician may be rejected only if the ALJ gives "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Magallanes*, 881 F.2d at 751, 755 (quoting *Sprague*, 812 F.2d at 1230). Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it. *Andrews*, 53 F.3d at 1041. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 750, (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir.1986)). Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample*, 694 F.2d at 642 (quoting *Waters v. Gardner*, 452 F.2d 855, 858 n. 7 (9th Cir.1971)).

▮ Substantial evidence supports the ALJ's determination that Dr. Grosscup's reports do not show how Morgan's symptoms translate into specific functional deficits which preclude work activity. Although Dr. Grosscup identified characteristics that might limit Morgan's ability to work on a sustained basis: affective instability, intense anger, daily suicidal thoughts, and chronic feelings of emptiness, Dr. Grosscup did not explain *how* these characteristics precluded work activity in Morgan's case. The ALJ listed specific examples of how the level of impairment indicated by Dr. Grosscup was unreasonable given the description of Morgan's symptoms in her reports and other evidence in the record. For example, Dr. Grosscup, at various times, assessed Morgan as engaging and cooperative, with a sense of humor and a good ability to express himself. She indicated that Morgan was adequately groomed and punctual for his appointments. The ALJ relied on these specific factors in rejecting Dr. Grosscup's opinion that Morgan "lacked an ability to function socially in order to conduct personal business and otherwise carry out daily activities."

Morgan contends that Dr. Grosscup's diagnoses of the effectiveness of Morgan's medication and of Morgan's suicidal impulses are consistent with the views of the other medical examiners. But the ALJ noted that during July 1994, Dr. Reaves recognized "significant improvement" from the medication, while Dr. Grosscup found only "moderate change." Dr. Reaves determined that Morgan was "not currently actively suicidal," while Dr. Grosscup noted "current suicidal thoughts." At best, the doctors' almost contemporaneous diagnoses are inconclusive.

Where medical reports are inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Sample*, 694 F.2d at 642 (quoting *Waters*, 452 F.2d at 858 n. 7). Consequently, when evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 750.

Next, Morgan argues the ALJ substituted his own judgment for that of medical sources in rejecting Dr. Grosscup's diagnosis of alcohol dependence. Morgan notes that all three medical experts, including Dr. McConochie, the nontreating, nonexamining medical expert who testified at the hearing, diagnosed Morgan with some form of "Alcoholism." [3]

Morgan correctly asserts that an ALJ must accompany rejection of an expert's uncontroverted opinion with "clear and convincing" reasons for doing so. *Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 751. But rather than rejecting Dr. Grosscup's diagnosis of alcohol dependence, the ALJ rejected Morgan's attempt to establish disability under the Social Security Act based on alcoholism. The ALJ noted that Morgan held his previous job while consuming alcohol at the level he contends established his alcohol dependency.

In challenging the ALJ's rejection of Dr. Reaves's opinions, Morgan argues the ALJ wrongly relied upon the circumstance that Dr. Reaves first examined Morgan in 1994, yet he diagnosed Morgan as disabled from 1989, four years earlier. Morgan argues there was nothing improper about Dr. Reaves's retroactive diagnosis.

We agree with Morgan that the circumstance of a retroactive diagnosis, standing alone, may not be sufficient to discount the opinion of a treating physician. Here, however, there was more. The ALJ noted, contrary to Dr. Reaves's conclusion that Morgan suffered from "marked limitations," that the evidence established that Morgan adequately copes with the social aspects of daily living,

---

**3.** To be exact, Dr. Grosscup diagnosed Morgan as suffering from Alcohol Dependence, Dr. Reaves diagnosed Morgan as suffering from Alcohol Abuse, and Dr. McConochie diagnosed Morgan as suffering from Alcoholism.

continues to maintain some friendships, and manifests above-average intelligence and other cognitive abilities. In addition, although Dr. Reaves determined that Morgan could not work without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and work in coordination or proximity to others without being distracted by them, the ALJ recognized that no substantial evidence existed demonstrating that Morgan's mental impairments prevented him from working. In fact, the ALJ noted that Morgan demonstrated the ability to work independently and be self-motivated by maintaining a one-acre garden and assisting with the restoration of an old house.

Inconsistency between Dr. Grosscup's and Dr. Reaves's conclusions provided the ALJ additional justification for rejecting Dr. Reaves's opinion. The ALJ found that Dr. Reaves's opinions regarding Morgan's cognitive abilities contradicted those offered by Dr. Grosscup in her mental status evaluation. Further, Dr. Reaves's conclusion regarding Morgan's suicide risk was inconsistent with that of Dr. Grosscup. On the other hand, the ALJ noted that Dr. Reaves, like Dr. Grosscup, allowed Morgan's attitude and lack of interest in work to influence his assessment that Morgan could *not* work.

■ The ALJ also rejected the opinions of Dr. Grosscup and Dr. Reaves in part because those opinions were premised on Morgan's subjective complaints, which the ALJ discounted for the reasons previously stated. A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations" may be disregarded where those complaints have been "properly discounted." *Fair*, 885 F.2d at 605, citing *Brawner v. Secretary of Health & Human Servs.*, 839 F.2d 432, 433–34 (9th Cir.1988).

In rejecting the opinions of Dr. Grosscup and Dr. Reaves, the ALJ also relied on the opinion of Dr. McConochie, the nontreating, nonexamining, testifying medical expert. Dr. McConochie testified that the medical evidence did not support a diagnosis of personality disorder. Dr. McConochie concluded that Morgan did not meet the requirements

for disability, because Morgan had only slight difficulties in maintaining social functioning and never or seldom had deficiencies of concentration, persistence or pace. In contrast with the opinions of Dr. Grosscup and Dr. Reaves, Dr. McConochie testified that Morgan had no significant limitations on the MFRC assessment.

■ The opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician. *See Lester*, 81 F.3d 821; *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984). In *Gallant*, we determined that "the report of [a] nontreating, nonexamining physician, combined with the ALJ's own observation of [the] claimant's demeanor at the hearing," did not constitute substantial evidence and, therefore, did not support the Commissioner's rejection of the examining physician's opinion that the claimant was disabled. *Gallant*, 753 F.2d at 1456. In *Pitzer*, we held that the nonexamining physician's opinion "with nothing more" did not constitute substantial evidence. *Pitzer*, 908 F.2d at 502.

But we have consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor. *See, e.g., Magallanes*, 881 F.2d at 751–55; *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). In *Magallanes*, evidence that supported the ALJ's determination included, among other things, testimony from the claimant that conflicted with her treating physician's opinion. *Magallanes*, 881 F.2d at 751–51. In *Andrews*, the fact that the results of psychological testing conducted by the examining psychologist were suspect, as a product of the claimant's drug use, contributed to the ALJ's findings. *Andrews*, 53 F.3d at 1035.

In the present case, the ALJ pointed to specific evidence in addition to his personal observations, and the opinion of the nontreating, nonexamining medical advisor, Dr. McConochie, to support his rejection of the

opinions of Dr. Reaves and Dr. Grosscup. As in *Magallanes*, the ALJ cited to testimony from Morgan that conflicted with the Reaves and Grosscup opinions. Similar to *Andrews*, the ALJ in the present case discounted the results of the psychological testing conducted by the examining psychologist based on Morgan's alcohol use and his "not entirely credible" testimony.

Moreover, internal inconsistencies within Dr. Reaves's and Dr. Grosscup's reports, and the inconsistencies between their reports, also constitute relevant evidence. The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity. *See Andrews*, 53 F.3d at 1041; *Magallanes*, 881 F.2d at 751, 755. Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of Dr. Reaves and Dr. Grosscup falls within this responsibility.

### CONCLUSION

We affirm the judgment of the district court, which upheld the final decision of the Commissioner denying Morgan's application for Disability Insurance Benefits under Title XVIII of the Social Security Act, 42 U.S.C. § 423 and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*

AFFIRMED.

NOONAN, Circuit Judge, dissenting:

This case illustrates both the difficulties created by our case law and the difficulty of fairly assessing the work capabilities of a Social Security applicant whose major problems are mental and whose disability is due in part to alcoholism and other substance abuse. Under our case law the one factfinder who always has a chance to see the applicant is required to justify his conclusions with more rigor than we demand of juries. The understandable temptation—yielded to here, I believe—is to temper the rigor by letting the ALJ satisfy his obligations with reasoning that superficially accommodates itself to our criteria while actually subverting them. If we are

to have a consistent rule of law in Social Security cases, we can't acquiesce in pro forma compliance by the ALJ. If we are to grant disability benefits to those too mentally impaired to engage in substantial gainful activity, we cannot deny them to a man whose treating psychiatrist and examining psychologist have found him substantially impaired in social interaction and in ability to respond appropriately to supervisors, co-workers and the demands of usual work situations.

The medical evidence in this case essentially consists of reports from one treating psychiatrist and one examining psychologist, and the testimony of a non-examining medical expert. The law regarding the relative weight to be assigned to these reports is established:

> As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991). We have also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

> The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984). As is the case with the opinion of treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of

an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

*Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995).

Morgan's treating psychiatrist and examining psychologist are in agreement that Morgan's mental state markedly limits him in sustained concentration and persistence and social interaction, two of the four key areas which are identified by the Social Security Administration's own regulations as being prerequisite to meeting the mental demands of work. 20 C.F.R. §§ 404.1521, 416.921. They also agree that Morgan lacks one of the three required abilities to perform unskilled work as described in Social Security ruling 85–15. The testifying vocational expert confirmed that an individual with the impairments identified by Drs. Reaves and Grosscup is precluded from engaging in substantial gainful activity.

In combination, Drs. Reaves and Grosscup diagnosed Morgan with suicidal ideation with a history of suicide in his family; affective instability involving major depression with a history of mental illness in his family; general social dysfunction including tendencies toward catastrophizing, resentment, hostility, intense anger, emptiness, and irritability; and marked limitations in ability to maintain sustained concentration and persistence. Both Drs. Reaves and Grosscup made clear in their reports as well as in their Mental Residual Functional Capacity evaluations that these impairments culminated in marked restrictions upon the two abilities which the regulations emphasize are prerequisites for engaging in work activity: ability to interact appropriately with people in a work environment and the ability to complete a normal workday without interruptions from psychologically based symptoms.

Drs. Reaves and Grosscup do not explain exactly why a tendency toward hostility limits Morgan's social functioning in a work environment. The explanation is not necessary: the limitation is self-evident. It is enough that they noted particular areas in which Morgan was challenged and then provided a diagnosis and an opinion as to the effect of the impairments on Morgan's mental residual functional capacity. The ALJ quibbles when he objects that the experts did not articulate the connections. If the doctors' diagnosis is correct, the limitations are gross.

The ALJ contends that the expert reports are internally inconsistent in that they include numerous comments which indicate that Morgan is socially functional and able to concentrate and work well and that they are inconsistent with each other in that Dr. Reaves' opinion of Morgan's superior cognitive functioning conflicts with Dr. Grosscup's mental status evaluation. The ALJ relied on these differences not only to discredit the conclusion that Morgan's social functioning and concentration abilities are markedly limited, but also to reject most of the experts' opinions and most of Morgan's subjective complaints as well. Under the Administration's regulations, however, a finding that a claimant is functional in some areas does not preclude a diagnosis of disability. Disability is defined as the inability to engage in substantial gainful activity. The ultimate question before an ALJ—and before the experts undertaking residual functional capacity assessment—is whether a claimant is impaired to the degree that he/she is incapable of performing work activities in a competitive work environment on a regular and sustained basis. Given that this is the question to be answered, a claimant's superior cognitive functioning, his ability to maintain some friendships, and his ability to stay focused while caring for a garden do not disprove the finding that he is precluded from substantial gainful work activity. What the ALJ characterizes as inconsistency within the reports is subordinate to the agreement between them that while Morgan can concentrate and can function well socially to some degree and under certain circumstances, the ability to engage in sustained, competitive work activity lies beyond the threshold of his capabilities.

The ALJ engages in further quibbling to find the two experts at odds with each other. In particular, the ALJ cites Dr. Reaves' June

1994 report in which Dr. Reaves noted that Morgan felt he had experienced "significant improvement," and Dr. Reaves' July 1994 report in which he noted that Morgan's symptoms of depression had improved; the ALJ contrasts these reports with Dr. Grosscup's July 1994 report in which Dr. Grosscup recognized only "moderate change." The ALJ also points out that while Dr. Reaves in his July 1994 and February 1995 reports commented that Morgan's suicidal ideation was less severe, Dr. Grosscup, during the same time periods, described Morgan as having a strong desire to kill himself. The ALJ finds these differences to be significant, arguing that they rendered the conflicting impressions suspect and adding that they appeared to show that Morgan himself made different reports to the experts thus discrediting his subjective symptoms as well.

A presumption in favor of Morgan's claim was created when both the treating psychiatrist and examining psychologist arrived at similar conclusions. *See Lester,* 81 F.3d at 832. The differences isolated by the ALJ are not significant enough to overcome this presumption. The differences are not inconsistencies. Like Dr. Reaves, Dr. Grosscup in her June and July reports did note that Morgan was feeling improvement; Dr. Grosscup went on however, to conclude that Morgan experienced only moderate change because Morgan was nonetheless complaining of significant side effects such as increased anger, hostility and frustration from the medication—side effects which were noted by Dr. Reaves also. Dr. Grosscup's report and conclusion are not inconsistent with Dr. Reaves' report and conclusion but represent a more conservative assessment. This slight difference in impression is not significant when both the psychiatrist and psychologist ultimately concluded that Morgan is *markedly impaired despite signs of improvement.* The same holds true for their divergence of opinion regarding Morgan's suicidal ideation. Dr. Reaves' notation that Morgan's suicidal ideation is less severe is not inconsistent with Dr. Grosscup's notation that Morgan remains suicidal. These two statements are, in fact, perfectly consistent, especially when one considers that both opinions regarding Morgan's suicidal ideation represent

attempts to characterize Morgan's fluctuating suicidal tendencies over a long period of time. It is not inconsistent for two experts to arrive at slightly different characterizations of a patient's up-and-down mental state over a period of a month. We have previously noted that depression is a complex and highly idiosyncratic phenomenon that often waxes and wanes, eluding neat description; it would be naive to expect someone suffering from depression and suicidal ideation to remain consistent in the way in which the ALJ demands. It was unreasonable to discredit the opinions of examining experts who otherwise agree.

In accepting the ALJ's reliance on Dr. McConochie's opinion, the majority refers to *Magallanes v. Bowen,* 881 F.2d 747, 751–55 (9th Cir.1989), *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995), and *Roberts v. Shalala,* 66 F.3d 179 (9th Cir.1995), in which we held that an ALJ may reject the opinion of a treating or examining physician, based in part on the testimony of a nontreating, nonexamining medical advisor. In each of these cases, however, there was significant evidence conflicting with the opinion of the treating or examining physicians. In *Magallenes,* there were laboratory results and contrary reports from other examining physicians. In *Andrews,* five nonexamining physicians, one of them a specialist in the relevant area, plus the claimant's own testimony, were used by the ALJ to reject the favorable report from one examining physician. In *Roberts,* the examining doctor's conclusion conflicted with his own written report and test results. Here, in contrast, there is no additional persuasive evidence to support the ALJ's rejection of the opinions of Morgan's treating psychiatrist and examining psychologist. Moreover, when, as here, the disability claim revolves primarily around allegations of mental disabilities which are by their nature difficult to diagnose, it is important to give adequate weight to *the personal impressions formed by the experts who have interacted with the claimant.* The standards set for an ALJ forming a conclusion as to mental capacity for sub-

stantial gainful employment have not been met.